Filed 8/20/14  P. v. Gutierrez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059786 |
| v. | (Super.Ct.No. FVA1200766) |
| FREDRICK RECEL GUTIERREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Arthur Harrison and Gerard S. Brown, Judges.  Affirmed.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Tami Falkenstein Hennick and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Fredrick Recel Gutierrez was charged by information with possession of a controlled substance for sale (Health & Saf. Code, § 11378, subd. (a), count 1). Defendant pled not guilty, and then moved to suppress the prosecution's evidence against him pursuant to Penal Code section 1538.5.[1] The trial court denied the motion. The prosecution subsequently amended the information to add a charge of transportation of a controlled substance. (Health & Saf. Code, § 11379, count 2.) Then, pursuant to a plea agreement, defendant pled guilty to count 2, in exchange for the dismissal of count 1, the dismissal of another case, and release on his own recognizance. The trial court placed defendant on probation for a period of three years, under specified conditions.

Defendant now contends that the trial court erred in denying his motion to suppress evidence. We affirm.

FACTUAL BACKGROUND

The following statement of facts is derived from the hearing on the motion to suppress: On April 21, 2012, at approximate 12:30 a.m., Officer Samuel Siggson was on patrol and noticed defendant parked in front of a residence, talking on his cell phone. Officer Siggson stopped his patrol car parallel to defendant's car, about one and one-half car lengths away. He did not block defendant's car. Officer Siggson turned on his spotlight to illuminate defendant's car and observed defendant for about 20 to 30 seconds. When the officer turned on his spotlight, defendant immediately hung up his cell phone, leaned over

---

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

2

toward the backseat, and frantically moved things around, as if he was trying to hide something. Officer Siggson got out of his patrol car and walked at a normal pace to the driver's side of defendant's car. He did not have any weapons drawn. Officer Siggson stood at arm's length from the driver's side window and started talking to defendant. He noticed objective indications of methamphetamine ingestion; he observed that defendant was sweating, he spoke rapidly, and he had a nervous expression on his face. The officer asked defendant what he was doing in the area, and defendant said he was waiting for his friend. Officer Siggson asked why he was sweating, and defendant said he did not want to get in trouble. The officer asked him his name, and defendant voluntarily handed him his driver's license. Officer Siggson asked if he could search his car, and defendant said, "Go ahead." The officer also asked if he had anything illegal on him. At first, defendant did not respond. He asked again, and defendant said he wanted to be honest with him and admitted he had a methamphetamine pipe. Officer Siggson had defendant step out of the car and asked him where the pipe was. Defendant pointed to his front pant pocket. The officer felt something, which was consistent with a pipe, and he retrieved it. Officer Siggson testified that he had participated in hundreds of investigations involving narcotics paraphernalia, including methamphetamine pipes. Based on his training and experience, he recognized defendant's pipe as a methamphetamine pipe. Officer Siggson arrested defendant, placed him in the patrol car, and then searched his car. He found another methamphetamine pipe in the glove box, and a box in the backseat floor area containing four baggies of methamphetamine.

3

On cross-examination, Officer Siggson testified that, up to the point he approached defendant, defendant had not committed any type of crime.

The prosecution argued that there was no detention, and that defendant's consent to search was voluntary. He pointed out that Officer Siggson did not immediately get out of his patrol car, but sat and observed defendant. Then, he did not "briskly walk" toward defendant's car. Officer Siggson initially just asked defendant what he was doing there.

Defense counsel argued that there was an unlawful detention. Officer Siggson shined a very bright spotlight on defendant's car and kept it there for over 30 seconds. Counsel asserted that it was Officer Siggson's "custom and practice" to have his hand around his safety belt, which included his gun on it. Siggson asked defendant questions, while still shining the spotlight on him, and Siggson held onto defendant's driver's license. Defense counsel argued that "there's no way" defendant would feel free to leave the scene, under these circumstances, and that "it was a detention from the get-go." Counsel further argued that the consent to search his car was not voluntary.

The court reviewed the facts and noted that the shining of a spotlight alone did not constitute a detention. It further noted the time of the encounter and that the officer decided to investigate by illuminating the area and the subject vehicle with a spotlight. The court commented that "[w]e don't require the officers to go blind as they attempt to fulfill their duties to investigate." The court stated that the officer observed defendant acting in a furtive manner when the spotlight was turned on, yet the officer was "restrained" and continued to observe him. The court noted that, upon approaching defendant and talking

4

with him, the officer observed symptoms of defendant being under the influence of methamphetamine. The court found that there was a detention "along that process," noting that it was "probably once he talked to the defendant . . . and noted objective symptoms of methamphetamine use." It was at that point that defendant was not free to leave. The court stated that, once the officer investigated further, he asked defendant if he had anything illegal on him, and he obtained consent to search the car. The court then denied the motion, concluding that the officer's actions were reasonable.

## ANALYSIS

### The Court Properly Denied Defendant's Motion to Suppress Evidence

Defendant argues that his detention was unlawful because the officer did not have reasonable suspicion at the initiation of the encounter. He contends that he was not free to leave the scene because of Officer Siggson's "coercive" conduct. He concludes that all evidence found as a result of the detention and search should have been suppressed. We disagree.

A. *Standard of Review*

"The Fourth Amendment of the federal Constitution requires state and federal courts to exclude evidence obtained from unreasonable government searches and seizures. [Citation.] Penal Code section 1538.5 allows a defendant to move to suppress evidence obtained in an improper seizure. [Citation.]" (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1105-1106.) "As the finder of fact in a proceeding to suppress evidence [Citation], the superior court is vested with the power to judge the credibility of the witnesses, resolve

5

any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673 (*Woods*).) Accordingly, on review of a motion to suppress, "'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.] But while we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]" (*Id.* at pp. 673-674.)

B. *Defendant Was Not Detained at the Start of His Encounter With Officer Siggson*

Defendant claims that he was detained at the start of his encounter with Officer Siggson, since a reasonable person would not have felt free to leave. We conclude that the encounter was consensual.

"The Fourth Amendment protects against unreasonable searches and seizures. [Citations.] 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299 (*Hernandez*).) "[T]he reasonable suspicion standard of *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' [Citation.]" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146 (*Letner*).)

6

"[A] detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*).)

Here, the circumstances demonstrated a consensual encounter, rather than a Fourth Amendment detention. Officer Siggson's conduct toward defendant was not coercive. When he approached defendant, Officer Siggson was alone. He walked at a normal pace to the driver's side of defendant's car. He had a gun as a part of his police uniform, but did not draw his weapon. There was no evidence that he even had his hand on his safety belt.

7

Furthermore, Officer Siggson remained an arm's length away from defendant's car window when he started talking to him, so there was no physical touching.

Officer Siggson's conversation with defendant was likewise consensual. "An officer has every right to talk to anyone he encounters while regularly performing his duties." (*People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227.) There was no evidence that he used a coercive tone of voice or language. (*Manuel G.*, *supra*, 16 Cal.4th at p. 821.) He proceeded to simply ask defendant what he was doing in the area, what his name was, etc.

Defendant claims that he was seized when Officer Siggson first approached him. He claims that a reasonable person would not have felt free to leave because Officer Siggson "parked his car in a way that partially obstructed [defendant's] exit from the cul-de-sac." However, the evidence showed that the officer parked his car parallel to defendant's car, about one and one-half car lengths away. Officer Siggson specifically testified that his patrol car did not block defendant's car from leaving the location.

Defendant also points out that Officer Siggson shined a bright spotlight on him for 20 to 30 seconds, "essentially letting [him] cook under the psychological heat of the spotlight." He also left the spotlight on when he approached defendant. However, "[w]hile the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention. [Citations.]" (*People v. Perez* (1989) 211 Cal.App.3d 1492, 1496.)

Defendant further argues that the encounter was coercive because Officer Siggson asked him accusatory questions, including whether he had anything illegal on him.

8

However, the evidence showed that Officer Siggson initiated the conversation by simply asking defendant what he was doing in the area and what his name was. Officer Siggson testified that he asked defendant if he had anything illegal on him for officer safety purposes (e.g., in case defendant had a weapon). Moreover, Officer Siggson noticed signs that defendant had used methamphetamine, so it was reasonable for him to ask if defendant had anything on him. (See *post*, § C.)

Finally, defendant asserts that Officer Siggson's "display of authority [by his] appearance," and particularly, the display of a weapon, contributed to the coerciveness of the encounter. However, Officer Siggson was simply dressed in his full uniform, which included his weapon. His appearance as an officer cannot be construed as a show of authority sufficient enough to make the encounter an unlawful detention.

In view of the circumstances, the trial court properly concluded that the initial encounter with defendant was not a detention.

C. *Defendant Was Lawfully Detained, and He Consented to the Search of His Person and His Car*

Defendant next argues that his consent to be searched was involuntary because it was the product of an unlawful detention; thus, all of the evidence discovered should have been excluded. However, as discussed *ante*, defendant was not unlawfully detained. Furthermore, his consent to search his person and car were voluntary.

We note, as the trial court did, that defendant was not detained until after Officer Siggson began asking him questions. Officer Siggson had reasonable suspicion to detain

9

defendant, based on his observation of objective indications of methamphetamine ingestion. He noticed that defendant was sweating and speaking rapidly, and that he had a nervous expression on his face. Officer Siggson testified that he had extensive experience in narcotics investigations, and had come in contact with narcotics users "on a daily basis." "Law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]'" (*Hernandez*, *supra*, 45 Cal.4th at p. 299.)

Defendant asserts that courts have held that "mere nervous, furtive, or evasive conduct" in front of officers will not justify a detention. However, "the possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity. [Citation.]" (*Letner*, *supra*, 50 Cal.4th at p. 146.) Moreover, defendant was not just nervous; he exhibited signs such as sweating and rapid speech. We conclude that, in light of the relatively low reasonable suspicion standard, Officer Siggson could reasonably detain defendant, since he had articulable facts which showed that defendant may be involved in criminal activity. (*Ibid*.; see also, *People v. Souza* (1994) 9 Cal.4th 224, 231.)

Furthermore, there is no basis for invalidating Officer Siggson's search and seizure of the evidence. "A search conducted without a warrant is unreasonable per se under the Fourth Amendment unless it falls within one of the 'specifically established and well-delineated exceptions.' [Citations.] It is 'well settled that one of the specifically established

10

exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.' [Citations.]" (*Woods*, *supra*, 21 Cal.4th at p. 674.) The evidence shows that when Officer Siggson asked defendant if he had anything illegal on him, defendant said he wanted to be honest with him. Defendant proceeded to tell Officer Siggson that he had a methamphetamine pipe. When the officer asked if he could search his car, defendant consented to the search by saying, "Go ahead."

In sum, the police officer had reasonable suspicion to detain defendant, and the searches of his person and car were valid, based on defendant's consent. Therefore, the trial court properly denied defendant's motion to suppress evidence.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:

McKINSTER

J.

CODRINGTON

J.

11