[No. S150038. Dec. 11, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE LEE HERNANDEZ, Defendant and Appellant.

[redacted]

**COUNSEL**

Robert Derham, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Stan A. Cross and Michael P. Farrell, Assistant Attorneys General, Janet Neeley, Julie A. Hokans and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—An officer who sees a vehicle displaying a temporary operating permit in lieu of license plates may not stop the vehicle simply because he or she believes that such permits are often forged or otherwise invalid. To support a stop the officer must have a reasonable suspicion that the particular permit is invalid. Otherwise, any car with such a permit could be stopped without particularized cause.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sheriff's Deputy Anthony Paonessa saw defendant George Lee Hernandez driving a pickup truck with no license plates, but displaying a temporary operating permit in the rear window.

Any vehicle driven on the roadway must display valid license plates or a valid temporary permit. (Veh. Code, §§ 4156,[1] 5200, 5201, 5202.) Nothing about defendant's permit appeared amiss and Deputy Paonessa saw no other violations. Nevertheless, Paonessa decided to effect a traffic stop. He discounted the presence of the apparently valid permit because, in his experience, such permits are "very often" forged or have been issued for a different vehicle, or the vehicle itself is stolen.

Deputy Paonessa told Hernandez he was stopped because he had no license plates. Hernandez replied that he had a temporary permit in the rear window. Paonessa then asked for Hernandez's driver's license, registration, and proof of insurance. Hernandez "appeared nervous. His speech was very rapid and abrupt, and his hands were shaking very badly."

In response to Deputy Paonessa's questions, Hernandez said he was on probation, but he would not identify the offense. After he repeatedly refused to get out of the truck, Paonessa sprayed him with pepper spray. When Hernandez continued to resist, Paonessa and his partner then pulled him from the truck and handcuffed him.

After Hernandez's motion to suppress evidence[2] was denied, a jury convicted him of obstructing an officer in the performance of his duties,[3] resisting arrest,[4] being under the influence of methamphetamine,[5] and driving under the influence of drugs.[6]

The Court of Appeal reversed the judgment and remanded.

We affirm the judgment of the Court of Appeal.[7]

## II. DISCUSSION

In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated. "We

---

[1] Vehicle Code section 4156 provides: "Other provisions of this code notwithstanding, the department in its discretion may issue a temporary permit to operate a vehicle when a payment of fees has been accepted in an amount to be determined by, and paid to the department, by the owner or other person in lawful possession of such vehicle. The permit shall be subject to such terms and conditions and shall be valid for such period of time as the department shall deem appropriate under the circumstances."

[2] Penal Code section 1538.5.

[3] Penal Code section 69.

[4] Penal Code section 148, subdivision (a)(1).

[5] Health and Safety Code section 11550, subdivision (a).

[6] Vehicle Code section 23152, subdivision (a).

[7] The Attorney General's petition for review was untimely. We refused to grant relief from default. Nevertheless, we determined to grant review on our own motion in order to decide this matter in conjunction with the closely related case of *In re Raymond C.* (2008) 45 Cal.4th 303.

review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Saunders* (2006) 38 Cal.4th 1129, 1134 [45 Cal.Rptr.3d 66, 136 P.3d 859] (*Saunders*).) This case turns on a question of law.

■ The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982].) Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083 [45 Cal.Rptr.3d 8, 136 P.3d 810]; *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205].)

■ "[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. . . . [P]ersons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." (*Delaware v. Prouse* (1979) 440 U.S. 648, 663 [59 L.Ed.2d 660, 99 S.Ct. 1391].)

■ Law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' [Citations.]" (*United States v. Arvizu* (2002) 534 U.S. 266, 273 [151 L.Ed.2d 740, 122 S.Ct. 744] (*Arvizu*).)

■ However, officers are not entitled to rely on mere hunches. (*Arvizu, supra*, 534 U.S. at p. 273.) The failure here is that, although Deputy Paonessa knew that some people driving with a temporary permit may be violating the law, he could point to no articulable facts supporting a reasonable suspicion that Mr. Hernandez, in particular, may have been acting illegally.

Our recent decision in *Saunders, supra*, 38 Cal.4th 1129, is distinguishable. There an officer stopped a pickup because its front license plate was missing and the registration tabs on the rear license plate were expired. Even though an apparently current temporary permit was displayed in the rear window, we concluded that the investigative stop did not run afoul of the Fourth Amendment because the officer had no other ready means to verify the vehicle's compliance with the law. (*Saunders*, at p. 1131.)

Saunders's truck had an expired registration tab and no front license plate. We pointed out that "[w]e have not yet decided whether an officer may stop a vehicle that has an expired registration tab but also displays a temporary operating permit." We noted that there were conflicting opinions in the Courts of Appeal. However, we did not resolve the conflict because Saunders's front license plate was missing, and the lack of a front license plate had "long been recognized as a legitimate basis for a traffic stop." (*Saunders, supra*, 38 Cal.4th at pp. 1135–1136.)

Without a traffic stop the officer could not determine whether the temporary operating permit applied only to the expired registration or to the missing license plate as well. "Moreover, the officer's suspicion that the vehicle was in violation of section 5200 was supported by the [Department of Motor Vehicles] procedures for replacing lost, stolen, or mutilated plates. Under those procedures, a registered owner must surrender or mail in 'the remaining plate(s).' [Citation.] Yet, as both parties testified, the pickup still displayed its rear license plate, which supported the inference that the registered owner had *not* initiated the process of replacing the missing plate." (*Saunders, supra*, 38 Cal.4th at p. 1137.) Thus, in *Saunders* the officer confronted an anomalous situation. The pickup had one license plate *and* a temporary permit. Under DMV regulations, those circumstances would appear to be mutually exclusive. As a result, the officer had ample justification to stop the truck to investigate. (*Ibid.*)

Here, both of defendant's truck's plates were missing. Accordingly, there was no ambiguity regarding his apparently valid temporary permit. Nevertheless, the Attorney General contends that Deputy Paonessa was entitled to rely on his experience that temporary permits are often invalid, and thus he was entitled to stop defendant, even though there was no objective indication that defendant was violating the law.

To accept the Attorney General's argument would be to depart from settled California and federal precedent requiring particularized suspicion. This we decline to do. Courts from other jurisdictions also seem uniformly to have concluded that permitting officers to stop any car with temporary permits would be to countenance the exercise of the unbridled discretion condemned in *Delaware v. Prouse, supra*, 440 U.S. at page 663. (See *U.S. v. Wilson* (4th Cir. 2000) 205 F.3d 720; *Bius v. State* (2002) 254 Ga.App. 634 [563 S.E.2d 527]; *State v. Childs* (1993) 242 Neb. 426 [495 N.W.2d 475]; *State v. Aguilar* (Ct.App. 2007) 2007 NMCA 40 [141 N.M. 364, 155 P.3d 769]; *State v. Chatton* (1984) 11 Ohio St.3d 59 [11 Ohio B. 250, 463 N.E.2d 1237]; *State v. Butler* (Ct.App. 2000) 343 S.C. 198 [539 S.E.2d 414]; *State v. Lord* (2006) 2006 WI 122 [297 Wis.2d 592, 723 N.W.2d 425]; see also *People v. Nabong* (2004) 115 Cal.App.4th Supp. 1 [9 Cal.Rptr.3d 854].)

The Attorney General contends it is significant that defendant's truck was an older model, "which presumably would have had already been issued license plates . . . ." He faults the Court of Appeal for having "failed to address why an older vehicle lacking license plates, as distinguished from a new car, would not objectively contribute to an officer's reasonable belief that a violation of law has occurred, thus justifying a vehicle stop."

The short answer to the Attorney General's argument is that the age of defendant's truck was not mentioned at the suppression hearing, where Deputy Paonessa simply described defendant's vehicle as a "brown pickup truck." Asked to describe it further, he said it was a "brown Toyota pickup truck."

In a variant of this argument, the Attorney General contends that a vehicle that has been issued license plates must display the plates even if a temporary operating permit has been issued. Again, this assumes that defendant's was an older model that had been issued plates, an assumption not supported by the record of the suppression hearing.

Moreover, license plates once issued can be lost or damaged, requiring replacement (*Saunders, supra*, 38 Cal.4th at p. 1137), and the Vehicle Code does provide that a vehicle may be driven without plates, if it displays a valid temporary permit (Veh. Code, § 5202). Therefore, the age of the vehicle, without additional particularized suspicion, would not have supported the stop.

## III. DISPOSITION

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.