Filed 2/21/14  P. v. Morris CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062443 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD237458) |
| ROBERT JAMES MORRIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederick Maguire, Judge.  Reversed.

Law office of Alissa L. Bjerkhoel and Alissa L. Bjerkhoel for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Robert James Morris pleaded guilty to transporting a controlled substance and possessing a controlled substance for sale. The trial court granted him probation after it denied his motion to suppress. He contends that methamphetamine found in a closed eyeglasses case during an inventory search of his car and any other evidence obtained after his subsequent arrest should have been suppressed as the fruits of an unlawful search. We agree.

FACTUAL AND PROCEDURAL BACKGROUND

Morris moved to suppress all observations made and physical evidence seized after a traffic stop arguing the prolonged detention after he produced proof of valid registration was unreasonable, the inventory search was unjustified and the record contained no evidence regarding a police policy for opening closed containers. After holding two hearings, the court denied the motion.

Testimony at the suppression hearings established that while on patrol, San Diego Police Officer Paul Tom noticed a car that displayed both a temporary operating permit on the back windshield and a current registration tab on the license plate. The simultaneous display of both items caught Officer Tom's attention because people ordinarily take off the temporary operating permit when they receive the registration tab. Officer Tom pulled the car over after a computer check of the license plate number showed that the registration had expired. Morris was driving and codefendant Randall Acord was in the front seat.

The parties dispute whether Officer Tom then asked Morris for his license, registration and insurance, or whether he only asked for registration. Morris handed Officer Tom valid registration paperwork dated the day before which showed he had valid registration, a California identification card instead of a driver's license and stated he did not have insurance. Officer Tom asked Morris whether he had a driver's license. Morris claimed he had a good license, but later admitted that his license may have been suspended for unpaid child support.

A computer check revealed that Morris's license had been suspended for failure to pay child support and that a notice of suspension had been mailed and not returned unclaimed. Morris verified that he was still residing at the same address. Because Morris did not have insurance or a valid driver's license, Officer Tom decided to impound the car. He was concerned about potential liability if Morris again drove the car without a driver's license and insurance because the computer system would show that he had stopped the car but did nothing to prevent Morris from driving without a license or insurance.

Officer Tom requested assistance of another officer and waited for that officer to arrive. Officer Tom estimated that he had been with the defendants for about 3 or 4 minutes by the time Morris admitted that his license might have been suspended, and that the second officer arrived about 10 or 15 minutes after the initial stop. Officer Tom had defendants exit the car, patted them down, and then began to inventory the contents of the car in anticipation that the car would be impounded.

The San Diego Police Department has a written manual that addresses vehicle impounds. The manual permits officers to impound a vehicle after they determine the driver has a suspended license, and requires officers to conduct an inventory of the car if they impound it. Officer Tom did not know whether the manual allowed him to conduct an inventory search without actually impounding the car. Officer Tom could not recall if he called for a tow truck before he began the inventory search.

During the inventory, Officer Tom found, among other things, a small digital scale and a closed eyeglasses case that he opened to discover a plastic bag containing a white crystal-like substance that appeared to be methamphetamine. Officer Tom decided to arrest the defendants and handcuffed them. A postarrest search of the defendants revealed a plastic bag with a white crystal-like substance in Acord's pocket, and $664 in cash in Morris's pocket. Subsequent testing revealed that the plastic bags contained about 39 grams of methamphetamine. Officer Tom later changed his mind about impounding the car because the men in the car were being arrested and could not drive it away. The defendants had been cooperative, the car was legally parked and he did not see the need to "add insult to injury."

After the suppression hearings, defense counsel requested reconsideration of his suppression motion due to new evidence discovered after the motion denial; namely, that Officer Tom never called a tow truck. The trial court considered the new evidence and again denied the motion.

DISCUSSION

When reviewing a trial court's ruling on a suppression motion, we accept the court's implicit or explicit factual findings when supported by substantial evidence and independently determine, in light of the facts so found, whether the search and seizure was reasonable. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.) "The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133-1134 (*Saunders*).)

"Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed." (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) "A traffic stop is lawful at its inception if it is based on a reasonable suspicion that *any* traffic violation has occurred, even if it is ultimately determined that no violation did occur." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 510.) As a threshold matter, Morris does not contest that Officer Tom properly conducted a traffic stop based on a reasonable suspicion that his car was not properly registered. It is what happened *after* Officer Tom properly stopped Morris that is in dispute.

Morris contends that once he produced a valid registration, thus dispelling the reason for the traffic stop, his prolonged detention was unreasonable and in violation of the federal and state constitutions. In making this argument, Morris asserts the record shows Officer Tom initially inquired whether he had valid registration. He argues that once he produced the valid registration, Officer Tom's later inquiries for his license and

5

insurance were unjustified.  Morris admits that if, as the People contend, Officer Tom had asked him for his registration, license and insurance at the same time, that the "stop would be constitutional and the issue would not be a subject of the instant appeal."

After the second hearing, the trial court made a lengthy statement on the record. The trial court found that Officer Tom simultaneously asked Morris for his registration, license and insurance.  This finding is supported by the record.

Officer Tom testified inconsistently at the first hearing, initially claiming that he asked for a registration and later stating he requested a driver's license and proof of insurance.  Officer Tom, however, responded affirmatively when the trial court later questioned:  "So—but you had asked him for his license and registration and insurance, correct?"  At the second hearing, when asked about what happened once he pulled the car over, Officer Tom responded:  "I contacted [Morris] on the driver's side of the car, and I asked for license, registration, and insurance."  Officer Tom later responded affirmatively when the prosecutor asked:  "Officer, just to be clear, when you first approached [Morris] after stopping the vehicle, did you request the license, registration, and insurance information all at the same time?"

Citing *People v. McGaughran* (1979) 25 Cal.3d 577 (*McGaughran*), the trial court later rejected the argument that Officer Tom improperly prolonged the detention when he investigated the status of Morris's driver's license.  We agree.

In *McGaughran*, our high court enumerated the duties that are "reasonably necessary" to investigate a traffic violation and held that an additional 10-minute period of detention for the purpose of seeking out unrelated arrest warrants exceeded the

6

constitutional limitations of the stop because it was not "reasonably necessary" to the process of completing the officer's duties related to the traffic violation. (*McGaughran*, *supra*, 25 Cal.3d at pp. 584, 587, 596.) In so ruling, the court noted that the time to complete the traffic stop includes any time to write out a citation and obtain a promise to appear, review license and registration, inspect the vehicle if the officer believes it is dangerously unsafe, and "other steps customarily taken as matters of good police practice." (*Id.* at p. 584.)

Another court explained: "The import of *McGaughran* is not the setting of a general outside time limit for minor traffic offense detentions. Implicit in the *McGaughran* analysis is a recognition that the circumstances of each traffic detention are unique and that the reasonableness of each detention period must be judged on its particular circumstances. The clear intent of *McGaughran* is to preclude officers from imposing a general crime investigation upon the detained traffic offender that is not 'reasonably necessary' to completion of the officer's traffic citation duties unless the officer has an independent reasonable suspicion that the driver has committed unrelated offenses." (*Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 358.)

Here, after Officer Tom lawfully stopped the car he was entitled to demand Morris's license and registration. (Veh. Code, §§ 4462, subd. (a), 12951, subd. (b); *Saunders*, *supra*, 38 Cal.4th 1129 at p. 1137.) Morris produced a valid registration and an identification card instead of a driver's license. Where, as here, the driver does not produce a valid driver's license, the officer may expand the scope of the detention. (*People v. Valencia* (1993) 20 Cal.App.4th 906, 918.) We reject any suggestion that once

7

Morris produced a valid registration, Officer Tom could ignore that Morris failed to provide a valid driver's license. Officer Tom was entitled to complete the traffic stop by investigating whether Morris had a valid driver's license and this investigation did not impermissibly prolong the stop.

Morris next argues that his car should not have been subject to impound under the instant circumstances. He asserts the prosecution did not meet its burden of establishing that impounding the car was constitutionally reasonable because it failed to show that removal of the car from the street furthered a community caretaking function. Even assuming the decision to impound did not violate the Fourth Amendment, Morris contends the inventory search was invalid because there was no evidence the San Diego Police Department has standardized procedures for conducting inventory searches, including the opening of containers. We need not address whether the impound of Morris's car furthered a community caretaking function because the People failed to satisfy their burden of establishing the search of Morris's car was conducted pursuant to a standardized inventory procedure.

Warrantless searches are presumptively unreasonable unless they fall within a few well-delineated exceptions. (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 372; *People v. Williams* (1999) 20 Cal.4th 119, 127 (*Williams*).) Inventory searches of police-impounded cars are a well-recognized exception to the warrant requirement because they serve "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Colorado v. Bertine* (1987) 479 U.S. 367, 372.) Nonetheless, it is well

8

established that inventory searches must not be a "ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4 (*Wells*); *Williams*, *supra*, 20 Cal.4th at p. 126.) *Wells* and *Williams* addressed impermissible inventory searches of closed containers in impounded cars.

In *Wells*, our high court stated that a police officer should be allowed latitude "to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." (*Wells*, *supra*, 495 U.S. at p. 4.) It explained that policies of opening all containers, opening no containers, or giving officers discretion regarding what containers to open were equally permissible. (*Ibid.*) It held, however, that evidence found during an inventory search must be suppressed where police had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." (*Id.* at pp. 4-5.)

Similarly, in *Williams*, California Supreme Court stated the "prosecution must always prove the existence of a policy supporting an inventory search . . . ." (*Williams*, *supra*, 20 Cal.4th at p. 138.) "Because of the risk that an inventory search will be 'a ruse for a general rummaging,' a risk that this case particularly exemplifies, a valid inventory search must adhere to a preexisting policy or practice. [Citation.] This rule may require the prosecution to prove more than the existence of some general policy authorizing inventory searches; when relevant, the prosecution must also prove a policy or practice governing the opening of closed containers encountered during an inventory search." (*Ibid.*) In *Williams*, the officers found illegal drugs in closed leather bags inside the defendant's truck during the inventory search. Because the prosecution did not prove the

9

leather bags had been opened "pursuant to a policy or practice," the Court held the warrantless search was unlawful. (*Ibid.*)

Here, during the inventory search Officer Tom opened an eyeglasses case to find the methamphetamine. After finding the drugs, Officer Tom arrested Morris and Acord. At the suppression hearing, Officer Tom testified that department policy permits him to impound a vehicle if a driver has a suspended license and requires an inventory if a vehicle is to be impounded. This conclusory testimony is insufficient. The People must prove the actual existence of a policy, including "the specifics" that govern those areas actually searched. (*Williams*, *supra*, 20 Cal.4th at p. 138.) The People did not present evidence of any policy regarding the opening of closed containers during an inventory search and thus failed to meet its burden of justifying the warrantless search, rendering the warrantless search unlawful. The Attorney General erroneously relies on *People v. Green* (1996) 46 Cal.App.4th 367 (*Green*), for the proposition that the inventory search was lawful because the police followed standard procedures. The *Green* court did not address the search of closed containers because the evidence that the officers seized was located in plain sight. (*Id.* at p. 370.) Thus, there was no need for the prosecution in that case to establish the police had a particular policy allowing searches of a container.

DISPOSITION

The judgment is reversed. On remand the trial court is directed to vacate its order denying Morris's motion to suppress evidence and to enter a new order granting the motion. The trial court is further directed to permit Morris to withdraw his plea within 30 days after issuance of the remittitur. If Morris does not move to withdraw his plea within that time, the judgment of conviction shall be reinstated.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

11