Filed 12/19/14  P. v. Lord CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KARLA ANNE LORD,<br><br>    Defendant and Appellant. | D065024<br><br><br>(Super. Ct. No. SCN303672) |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Lewis A. Wenzell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Karla Anne Lord of driving a vehicle under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a)) and driving a vehicle with a blood alcohol level of 0.08 percent or more (Veh. Code, § 23152, subd. (b)).  In addition, she pleaded guilty to driving with a license suspended for a prior driving under the influence conviction (Veh. Code, § 14601.2, subd. (a)) and driving with a license suspended for a prior refusal to submit to alcohol testing (Veh. Code, § 14601.5, subd. (a)).  She also admitted having three prior driving under the influence convictions within the past 10 years (Veh. Code, §§ 23626, 23550, subd. (a)).  The court suspended imposition of sentence for five years and granted her felony probation, conditioned upon her serving 365 days in jail.

Lord appeals, contending we must reverse the judgment because the court erred in denying her pretrial suppression motion.  We conclude no error occurred and affirm the judgment.

## BACKGROUND[1]

Lord's roommate locked herself in the bathroom and called 911, reporting Lord was threatening her and was also endangering her by continually leaving the doors and windows of their apartment open.  Lord's roommate additionally reported Lord used alcohol and smoked marijuana.  The 911 operator asked whether Lord had used alcohol or smoked marijuana that day.  Lord's roommate confirmed Lord had smoked marijuana

---

[1]    As the appeal relates solely to Lord's suppression motion, we confine our summary to the facts before the court at the time it heard the motion.

2

that morning, but she did not know whether Lord had used alcohol that day. The roommate told the operator Lord was 59 years old, five feet eight inches tall, and wore "black pants and some kind of white, blue sweatshirt."

San Diego County Sheriff's Deputy Raul Silva was subsequently dispatched to Lord's roommate's apartment to investigate a report of a verbal disturbance between roommates. He was in uniform and drove a marked patrol car. The dispatcher prioritized the call as a 4 on a scale of 1 to 5, with 1 being the highest priority and 5 being the lowest priority. The dispatcher informed him Lord was approximately 59 years old, she was wearing a blue top, and she had smoked marijuana.

Deputy Silva reached Lord's roommate's apartment complex approximately four minutes after receiving the dispatch. As he pulled into the parking lot of the apartment complex, he noticed a white car backing out of a parking spot in front of Lord's roommate's address. The driver was a 50- to 60-year old woman wearing a blue sweatshirt. Silva suspected the driver was the person involved in the argument he was dispatched to investigate. He also suspected she might be driving under the influence of marijuana, although he did not notice any objective symptoms at the time.

Deputy Silva waited and when the driver, later determined to be Lord, approached him, he stuck his left arm out of his patrol car window and waved, signaling her to stop. When Lord stopped, Silva asked her whether she had been involved in an argument with her roommate. She said no, she was just going home. He asked her again if she was involved "in the argument at such and such given address." He told her she matched the description given by her roommate and her roommate reported she was under the

3

influence of marijuana. Lord told him, "it was just an argument, and she was going to go home."

Deputy Silva asked Lord to wait where she was because another deputy was coming to speak with her roommate. Lord said she was not going to wait there and was going to park her car. She then drove out of the parking lot and up the street 100 feet, turned into an entrance to the same parking lot, and parked in the nearest parking space.

Deputy Silva parked his car, got out of it, and walked over to Lord's car. He relayed her license plate to a dispatcher. Then, he asked Lord for her driver's license. She handed him a state identification card. Silva noticed her speech was slurred and her eyes were bloodshot and watery. He also smelled alcohol on her breath and person. In addition, he knew from his training and experience "nine out ten times" when a driver provides an identification card rather than a driver's license, the driver's license is suspended. Silva conducted a records check, which indicated Lord was on probation and her driving privileges had been suspended because of a prior conviction for driving under the influence.

After Deputy Silva conducted the records check, Lord asked if she could clean her car. When he told her she could not, she demanded he immediately give her a breathalyzer test. He asked if she had ingested any alcohol or used any marijuana. She said she had ingested some wine and used marijuana a couple of hours earlier. She asked again to clean her car and he again told her she could not. Around then, he noticed she had a beer can in a brown paper bag sitting in plain view on the front passenger

4

floorboard. She also had a glass beer mug sitting in plain view on top of a bag of clothes sitting on the front passenger seat. Both the can and mug had alcohol in them.

By then, another sheriff's deputy had arrived and continued investigating whether Lord had been driving under the influence. Lord refused to take a field sobriety test and again asked for a breathalyzer test. A traffic deputy came and administered two preliminary alcohol screening tests, one minute apart. The first test showed Lord had a blood alcohol concentration of 0.122 percent. The second test showed she had a blood alcohol concentration of 0.124 percent. Later on, the traffic deputy administered a breath test, which produced similar results.

Lord filed a motion under Evidence Code section 1538.5 to suppress the evidence against her. The court denied the motion, finding Lord was not detained until Deputy Silva approached her and asked her for her drivers' license, and the detention was lawful at that point because, based on Silva's observations, he had reasonable suspicion to believe Lord was driving under the influence of alcohol and/or marijuana.

Lord filed a motion for reconsideration, arguing the court mistakenly concluded there was no detention when Deputy Silva first waved for Lord to stop her car. The court denied the motion, finding the motion was procedurally improper and, regardless, the court's prior ruling was supported by the facts and law.

## DISCUSSION

"In ruling on a motion to suppress, the trial court is charged with (1) finding the historical facts; (2) selecting the applicable rule of law; and (3) applying the latter to the former to determine whether or not the rule of law as applied to the established facts has

5

been violated. [Citation.] On appeal, we review the trial court's resolution of the first inquiry, which involves questions of fact, under the deferential substantial-evidence standard, but subject the second and third inquiries to independent review." (*People v. Parson* (2008) 44 Cal.4th 332, 345.)

"The Fourth Amendment protects against unreasonable searches and seizures." (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) " ' "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are . . . 'consensual encounters' . . . , which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' . . . Second, there are what are commonly termed 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' . . . Third, and finally, there are those seizures of an individual which exceed the permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime." ' " (*People v. Hughes* (2002) 27 Cal.4th 287, 327-328 (*Hughes*).)

In this case, the parties agree a detention occurred, but they disagree on when it occurred. Lord contends it occurred immediately when Deputy Silva waved for her to

stop. We disagree. Silva's actions at this point were akin to the actions of one motorist flagging down another for directions or similar assistance. " '[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. [Citations.] Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. ' " (*Hughes*, *supra*, 27 Cal.4th at p. 328.) "[A] seizure occurs only 'when the officer, " 'by means of physical force or show of authority,' " terminates or restrains [a person's] freedom of movement [citation] "*through means intentionally applied . . .* " [citation].' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.) As there is no evidence in the record Deputy Silva activated the overhead lights on his police car, ordered Lord to halt, or otherwise acted like he was making a vehicle stop, we conclude Deputy Silva did not detain and, consequently, did not infringe upon Lord's constitutional rights when he waved for her to stop her car. (*Hughes*, at p. 328 [if there is no detention, then no constitutional rights have been infringed].)

The People conversely contend Deputy Silva did not detain Lord until he approached her after she parked her car. We disagree with this contention as well. A person is seized for Fourth Amendment purposes when a reasonable person in the same circumstances would not believe he or she was free to leave. (*Hughes*, *supra*, 27 Cal.4th at p. 328; *People v. Zamudio*, *supra*, 43 Cal.4th at p. 341.) Objectively, and subjectively,

7

this occurred when Silva, by show of authority, directed Lord to wait for the other deputy to arrive.

The question remains whether the detention was constitutionally reasonable. " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' " (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) "[W]here a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

At the point Deputy Silva directed Lord to wait, Silva knew Lord's roommate had reported she and Lord had argued, Lord had threatened her, and Lord had been using marijuana earlier in the day. He also knew Lord's description. When he arrived at the apartment complex where Lord's roommate lived, he saw someone matching Lord's description driving away in a car that had been parked in front of Lord's roommate's address. Lord initially lied about being involved in an argument with her roommate, but then admitted her involvement after Silva told her she matched the description given by her roommate and that her roommate had reported she was under the influence of marijuana. Thus, when Silva detained Lord, he had a reasonable suspicion she may have been involved in some type of altercation with her roommate and she may have been driving her car under the influence of marijuana. We, therefore, conclude Deputy Silva's detention of Lord was not unconstitutional.

8

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.