Filed 1/4/21  P. v. Thomas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ERIC ANGEL THOMAS, <br><br> Defendant and Appellant. | D076981 <br><br><br> (Super. Ct. No. SCD282431) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton and David M. Gill, Judges.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

After stopping Eric Angel Thomas for a traffic violation, police officers found methamphetamine and items indicative of drug sales during a search of Thomas and his vehicle pursuant to a Fourth Amendment waiver, which was a condition of his postrelease community supervision (PRCS). The trial court denied Thomas's motion to suppress in which he challenged the validity of the stop and asked the court to suppress the evidence obtained during the search. Thereafter, a jury convicted Thomas of one count of transportation of controlled substances (Health & Saf. Code, § 11379, subd. (a); count 1) and one count of possession of a controlled substance for sale (Health & Saf. Code, § 11378; count 2). Thomas admitted one prior strike conviction. The court sentenced him to eight years in state prison.

Thomas contends in this appeal that the trial court erred in denying his motion to suppress because the police officers did not have a reasonable suspicion to justify the traffic stop and, therefore, they violated his federal and state constitutional rights. He also contends the court violated his due process rights by imposing fines and fees without determining his ability to pay. We conclude the traffic stop was based on reasonable suspicion and the court properly denied the motion to suppress. We further conclude Thomas forfeited his claims regarding the court's imposition of fines and fees. We, therefore, affirm the judgment.

## II

## BACKGROUND[1]

On the afternoon of July 9, 2019, a police officer observed a vehicle driving northbound on 14th Street in the East Village of San Diego. The vehicle accelerated from a stop sign at a high rate of speed, stopped at a second stop sign, accelerated again, and drove at a high rate of speed through a third intersection. The vehicle swerved into another lane to avoid a pedestrian standing in a crosswalk, then continued down the street and turned onto another street.

The area was very congested with pedestrian and vehicle traffic. The officer believed the driver violated the Vehicle Code's basic speed law because driving with rapid acceleration at high speeds was unsafe for the prevailing conditions of the area where a lot of pedestrians, bicycles, scooters, and pedicabs were moving around the urban area. The police officer and his partner followed the vehicle and conducted a traffic stop. They drove in excess of the posted 25-mile-per-hour speed limit to catch up to the vehicle. Thomas was the driver and the sole occupant of the vehicle.

Before approaching the vehicle, the officer conducted a records check and discovered Thomas was the registered owner and he was on PRCS, which meant he likely had a Fourth Amendment waiver. After Thomas confirmed he was subject to supervision, the officers conducted a search based upon his Fourth Amendment waiver condition.

Officers found $340 in small bills and a plastic bindle containing 2.3 grams of methamphetamine in Thomas's pants pocket. In a backpack, they

---

[1] Because the motion to suppress hearing is the subject of this appeal, we summarize the facts related to the traffic stop from the evidence presented at that hearing. We draw the facts regarding what was found in the search from evidence presented at trial for context.

found two additional bindles holding 7.14 grams of methamphetamine along with plastic baggies and a working digital scale. In another backpack, officers located a glass container along with more baggies containing crystalline material. In the center console of the vehicle, officers located 100 unused small zippered baggies with yellow biohazard logos.

Thomas did not appear to be under the influence of methamphetamine during the traffic stop and he did not exhibit physical characteristics of a heavy methamphetamine user. A detective opined Thomas possessed the methamphetamine for sale rather than personal use.

## III

## DISCUSSION

### A

*Motion to Suppress*

#### 1

*General Principles*

"Both the federal and state Constitutions prohibit unreasonable searches and seizures. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' [Citation.] ' "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " ' " (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1041.)

"A defendant may move to suppress evidence under [Penal Code] section 1538.5 on grounds that a search without a warrant was unreasonable. A warrantless search is presumptively unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search." (*People v. Simon* (2016) 1 Cal.5th 98, 120 (*Simon*).)

4

An officer may detain an individual if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, warrant the intrusion. (*Terry v. Ohio* (1968) 392 U.S. 1, 21 (*Terry*).) Traffic stops "are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed." (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

"[T]he reasonable suspicion standard of *Terry*[, *supra,* 392 U.S. 1] is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' [Citation.] 'In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) "[T]he possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity. [Citations.] In determining whether a search or seizure was supported by a reasonable suspicion of criminal activity, ' "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." ' " (*Id.* at p. 147.)

In ruling on a motion to suppress, "[t]he trial court ' "find[s] the historical facts, select[s] the rule of law, and appl[ies] it to the facts in order to determine whether the law as applied has been violated." ' [Citation.] We review de novo a trial court's resolution of the legal questions resolved in a suppression motion, and we review the trial court's resolution of factual

5

issues under the more deferential substantial evidence standard." (*People v. Vargas* (2020) 9 Cal.5th 793, 814; S*imon, supra,* 1 Cal.5th at p. 120 [based on the facts found by the trial court, we exercise independent judgment to determine if the search was reasonable].) We "view the evidence in a light most favorable to the order denying the motion to suppress" and " ' "must accept the trial court's resolution of disputed facts and its assessment of credibility." ' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1010.)

2

*Procedural Background*

Thomas's motion to suppress challenged only the basis for the stop. Defense counsel argued there was no reasonable suspicion to pull Thomas over because there was no evidence of how fast he was driving, the officers did not initially stop him when they observed him accelerate through two intersections, and Thomas took evasive action to avoid a pedestrian illegally in a crosswalk even though Thomas had the right of way.

Because the defense satisfied its prima facie burden of showing a search without a warrant, the burden shifted to the People to show a justification for the warrantless search. The trial court summarized the evidence presented by the People as follows: "The testimony showed that the officer was experienced in the area, observed the defendant for several blocks, that he sped out from the stop sign at two stops prior to swerving around a pedestrian. The observations … appeared to be from … a basis of experience in the area and the traffic and congestion. The officer appeared credible and was not impeached."

Discussing the legal basis for the stop offered by the officer, the court said, "Basic speed law indicates that no person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard

6

for weather, visibility, or traffic and in no event at a speed which endangers the safety of persons or property." After applying the facts to the law, the court denied the motion based on the totality of the evidence. The court said, "I do think the testimony established a reasonable basis for the stop."[2]

### 3

### *Analysis*

As he did below, Thomas contends the officer did not establish he drove above the speed limit and his speed adjustments along with avoiding a pedestrian illegally in a crosswalk were innocent behaviors that cannot form reasonable suspicion to justify an investigatory stop. He also contends the totality of the circumstances gave rise to nothing more than a hunch Thomas was involved in criminal behavior, which was insufficient to justify the stop. We disagree.

There is no evidence the officers stopped Thomas based on a hunch he was involved in criminal activity, such as drug sales. This was not a situation where an officer suspected illegal activity because a driver appeared to moderate his speed when he observed an officer (*People v. Loewen* (1983) 35 Cal.3d 117, 127) or because he did not know the area (*United States v. Diaz-Juarez* (9th Cir. 2002) 299 F.3d 1138, 1147–1148). Even if Thomas drove below the posted speed limit and even if he had the right of way when he encountered the pedestrian, the officer testified he and his partner stopped the vehicle because they observed driving behavior that was unsafe for the conditions, which violated the basic speed law.

---

[2]     Thereafter, Thomas undertook his own representation and refiled the motion to suppress before trial. The trial judge denied the motion finding no new or different evidence to justify rehearing the motion. Thomas does not challenge this ruling on appeal.

The basic speed law set forth in Vehicle Code section 22350 states: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." Read as a whole, the basic speed law "regulates speed based on the totality of circumstances, including the way a person is driving." (*People v. Farleigh* (2017) 13 Cal.App.5th Supp. 12, 15.) "The first portion of the statute prohibits driving over the speed appropriate for external conditions, and the second portion of the statute prohibits driving at any excessive speed. Read together, both portions of the statute have effect and protect the public from any sort of dangerous speed." (*Id.* at p. 16.)

The trial court found credible the officer's testimony that the officers believed Thomas's driving behavior was unsafe for the conditions of the congested downtown area at the time. This gave rise to a reasonable suspicion of criminal behavior justifying the stop. Once they initiated the stop, the officers learned Thomas was subject to a Fourth Amendment waiver and conducted a search consistent with that condition. Under these circumstances, the court properly denied the motion to suppress.

B

*Fines, Fees, and Assessments*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Thomas contends the court violated his constitutional rights of due process and protection against excessive fines by imposing fines and fees without determining he has the ability to pay them. Thomas asks us to remand the matter for the court to conduct an ability to pay hearing. The People contend Thomas forfeited this claim and, alternatively, the restitution fine was

8

constitutional and any due process violation in imposing the non-punitive fees without a determination of Thomas's ability to pay was harmless beyond a reasonable doubt. We conclude Thomas forfeited the claim.

"At the core of the *Dueñas* opinion is its holding that imposition of fines, fees or assessments without a hearing on ability to pay denies due process. It was that court's view it was the trial court's duty to hold a hearing and thus failure to seek a hearing did not result in forfeiture. Further, the court found that the burden to prove 'present' ability to pay was on the prosecution. Other courts, including this court, have disagreed with *Dueñas* on these key principles." (*People v. Keene* (2019) 43 Cal.App.5th 861, 863; see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 327, review granted Nov. 26, 2019, S258946 [rejecting the *Dueñas* due process analysis for fines and fees]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 [applying excessive fine analysis for restitution fines]; and *People v. Kopp* (2019) 38 Cal.App.5th 47, 95–96 (*Kopp*), review granted Nov. 13, 2019, S257844 [concluding a defendant who requested ability to pay hearing bears burden of proof and applying due process analysis to court assessments and excessive fines analysis to restitution fines].)

It is not necessary for us to reach these broader issues in this case because we conclude Thomas forfeited his claim. Thomas's probation report recommended a restitution fine of $4,800 (Pen. Code, § 1202.4) with an additional restitution fine of $4,800 (Pen. Code, § 1202.45), to be stayed unless his supervision is revoked. Without objection, the court reduced the restitution fines to $2,400 each. It imposed recommended fees and assessments totaling an additional $1,044.[3]

---

[3] The fees and assessments included $40 in court security fees (Pen. Code, § 1465.8); $30 as an immediate critical needs assessment (Gov. Code,

Penal Code section 1202.4 authorizes a restitution fine of up to $10,000 in felony cases, and requires a sentencing court to impose a minimum fine of $300 notwithstanding a defendant's inability to pay that amount. *Dueñas* considered whether a minimum fine imposed under the statute was constitutional. But even before the *Dueñas* decision, a defendant's ability to pay was a relevant consideration in determining whether to impose a restitution fine greater than the statutory minimum. (Pen. Code, § 1202.4, subds. (c) and (d).)

Notwithstanding some broad language in *Dueñas*, cases since then have concluded that even when challenging a minimum fine, defendants bear the initial burden of (1) advising the court that they are unable to pay the fines and/or fees that the court proposes to assess, and (2) introducing minimal evidence to support that assertion. (E.g., *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed"]; *Kopp, supra*, 38 Cal.App.5th at p. 96 ["it is Appellants' burden to make a record below as to their ability to pay these assessments"].)

The court here questioned the probation officer regarding the recommended restitution fine of $4,800 and, on its own, chose to impose a fine of $2,400. It was defendant's burden to explain why the court should impose a lesser amount than was proposed. (Pen. Code, § 1202.4, subd. (d); *People v. Avila* (2009) 46 Cal.4th 680, 729 (*Avila*).) The failure to do so means an appellate challenge based on ability to pay is forfeited. (*Id.* at p. 729.)

---

§ 70373); a $154 criminal justice administration fee (Gov. Code, § 29550.1); a $615 drug program fee (Health & Saf. Code, § 11372.7); and a $205 lab analysis fee (Health & Saf. Code, § 11372.5).

10

Having failed to object, the argument regarding Thomas's inability to pay the assessed restitution fine is forfeited. (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.) Moreover, because he did not object to the $2,400 restitution fine, Thomas has similarly forfeited any challenge to the fees and assessments. (*Ibid.*)

IV

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


AARON, J.


DATO, J.

11
