Filed 1/21/25  P. v. Carrillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050893 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2214232) |
| v. | |
| URIEL CARRILLO, | |
| Defendant and Appellant. | |

Defendant Uriel Carrillo pleaded no contest to driving under the influence of alcohol with three or more prior convictions, in addition to three related charges.  The trial court imposed a total term of 16 months consisting of eight months in county jail and eight months under mandatory supervision.

Carrillo contends the trial court erred by denying his motion to suppress the evidence that the police obtained when they stopped his car.  He argues the police lacked reasonable suspicion to make the stop.

For the reasons below, we conclude this claim is without merit.  We will affirm the judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Procedural Background*

The prosecution charged Carrillo with four counts: count 1—driving under the influence of alcohol with three or more prior convictions (Veh. Code, § 23152,

subd. (a))[1]; count 2—driving under the influence with a blood alcohol level of 0.08 percent with three or more prior convictions (§ 23152, subd. (b)); count 3—operation of a vehicle by a person prohibited by court order (§ 23247, subd. (e)); and count 4—driving when his license was suspended or revoked for a prior conviction under section 23152 or section 23153 (§ 14601.2, subd. (a)). As to counts 1 and 2, the prosecution alleged Carrillo had been convicted of violating section 23152 three times within the preceding 10 years. (§ 23550.5.)

Carrillo moved to suppress the evidence obtained during the police stop of his vehicle, and after a hearing, the trial court denied the motion by written order. Carrillo then pleaded no contest to each of the four counts as charged, and he admitted the allegations. The trial court imposed a total term of 16 months consisting of eight months in county jail and eight months under mandatory supervision.

## B. Facts of the Offense

California Highway Patrol Officer Taranjit Gill testified that he and his partner were in their patrol vehicle heading southbound on U.S. Highway 101 around 1:10 a.m. when they saw a blue sedan driving in a "serpentine manner" in the Number 3 Lane. The sedan crossed the broken white lines on either side of the Number 3 Lane multiple times as the officers were driving behind the sedan. After observing the sedan for about a minute, the officers turned on their vehicle's emergency lights to conduct an enforcement stop. Carrillo continued driving for about two and a half minutes before his car finally stopped on the right shoulder. Before stopping, Carrillo drove over the "reverse gore point"—the roughly triangular area between the solid white lines that separate the left side of a lane entering onto a highway from the right side of the highway itself.

Officer Gill approached the passenger's side window and spoke with Carrillo, who was in the driver's seat. Carrillo said he had not had anything to drink, but he was

---

[1] Subsequent undesignated statutory references are to the Vehicle Code.

speaking slowly, his eyes were red and watery, and Officer Gill smelled alcohol in the car. Officer Gill and his partner asked Carrillo to get out of the car and they walked him to the area in front of the patrol car to conduct a field sobriety test. Officer Gill administered a horizontal gaze nystagmus test, and Carrillo displayed distinct and sustained nystagmus in both eyes. The officers then administered a preliminary alcohol screening breathalyzer, which resulted in blood alcohol readings of 0.157 percent and 0.146 percent. The officers determined Carrillo was under the influence of alcohol and placed him under arrest.

The Mobile Video Audio Recording System (MVARS)—i.e., the dashcam—on the officers' patrol car recorded a 28-minute video of the above events. Among other things, the video captured Carrillo's car as it entered onto U.S. Highway 101, and the video continuously captured the movement of his car until it stopped. The video also shows portions of the interaction between the officers and Carrillo following the stop.

## II. DISCUSSION

Carrillo contends the trial court erred by denying his motion to suppress evidence obtained during the vehicle stop because the police lacked reasonable suspicion to stop him. He argues the MVARS video shows he was not driving in a "serpentine manner," and the slight weaving of the car was insufficient to provide reasonable suspicion. The Attorney General argues the police had reasonable suspicion to stop Carrillo because the evidence shows his car was weaving and crossed the broken white lines while the officers were watching him.

### A. *Legal Principles*

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. [Citations.]" (*United States v. Arvizu* (2002) 534 U.S. 266, 273.) " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the

3

circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.] Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed. [Citations.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299 (*Hernandez*).)

" 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' [Citation.] ' "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " ' [Citations.]" (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1041.) " ' " ' "We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' " ' [Citation.]" (*Ibid.*)

### B. Procedural Background

Carrillo moved under Penal Code section 1538.5 to suppress all evidence obtained during the car stop, citing the same grounds he now raises on appeal, among other grounds. The prosecution opposed the motion, and the trial court held a hearing at which Officer Gill testified as set forth above in section II.B. The trial court admitted the MVARS video into evidence, together with a transcript of the audio and a transcript of the preliminary hearing.

The trial court denied the motion in a written order. Based on Officer Gill's testimony and the MVARS video, the trial court found that Carrillo, while driving in the Number 3 lane, crossed over into the Number 4 lane; retracted into the Number 3 lane; and then crossed over into the Number 2 lane. The court further found that the MVARS video showed Carrillo's car was weaving within the Number 3 lane, supporting Officer Gill's testimony that Carrillo was driving in a "serpentine manner." The court concluded

4

these facts constituted reasonable suspicion to stop Carrillo's car because such behavior is "reasonably indicative of driving under the influence."

## C. *Denial of the Motion to Suppress Was Not Error*

Our review of the MVARS video shows that substantial evidence supports the trial court's factual findings. The video supports a finding that while Carrillo was driving in the Number 3 lane, the wheels on the right side of his car drove over the broken white lines separating the Number 3 lane from the Number 4 lane. He then drove back into the Number 3 lane, and about 30 seconds later, the wheels on the left side of his car crossed over the broken white lines into the Number 2 lane before he returned to the Number 3 lane. Carrillo continued driving very close to the broken white lines on the left side of the lane for about 20 seconds before the officers, who were driving directly behind him, turned on their emergency lights.

Carrillo concedes his car "slightly cross[ed] onto the lane to the right," and similarly, that his car "subsequently slightly travelled onto the lane line on the left." He contests Officer Gill's testimony that he was driving in a "serpentine manner," and he argues that the conduct shown on the video is insufficient to provide reasonable suspicion for the stop. We are not persuaded. Regardless of whether Carrillo's driving may be accurately characterized as "serpentine," our review of the MVARS video shows that, before the officers initiated the stop, the movement of Carillo's car was "reasonably indicative of driving under the influence," as the trial court stated in its order.

Carrillo argues that the movement of the car as shown in the video is not a sufficient basis for reasonable suspicion based on *U.S. v. Colin* (9th Cir. 2002) 314 F.3d 439 (*Colin*). In *Colin*, the police watched a car as it drifted onto the solid white fog line on the far side of the right lane and traveled along the fog line for approximately 10 seconds. (*Id.* at p. 441.) The car then signaled a lane change and moved one lane to the left. The car's left wheels then traveled along the solid yellow line for approximately 10 seconds before the car returned to the center of the lane. The Court of Appeal held

5

these facts were insufficient to provide reasonable suspicion for a stop. (*Id.* at pp. 445-446.) However, as pointed out by both the Attorney General and the trial court, the *Colin* court relied largely on the fact that the car did not actually cross over the lines; rather, the car's wheels merely touched the lines. (*Id.* at p. 446.) The Court of Appeal further supported its holding with the fact that the police officer who made the stop did not conduct a field sobriety test or ask the driver if he had been drinking, which showed the officer did not have reasonable suspicion the driver was under the influence. (*Ibid.*)

Carrillo also relies on *U.S. v. Lyons* (10th Cir. 1993) 7 F.3d 973 (*Lyons*), overruled on another ground by *U.S. v. Botero–Ospina* (10th Cir. 1995) 71 F.3d 783. In *Lyons*, the police were following a truck for approximately two miles when they saw it weave three to four times in its lane, but the truck remained within its lane. (*Lyons*, at p. 974.) The court of appeal held the police lacked reasonable suspicion to stop the truck, based partly on the police officer's failure to articulate any factual basis for his claim that the defendant was impaired. The officer "could not articulate a reason for that claim but relied instead upon his 'sixth sense.' Such reliance is not the stuff of objective reasonability. It is merely the manifestation of a hunch that something foul is afoot." (*Id.* at p. 976.) And just as the *Colin* court did, the *Lyons* court further based its holding on the observation that the officer failed to make any efforts to determine the driver's state of sobriety after making the stop. (*Ibid.*)

Both *Lyons* and *Colin* are distinguishable from this case. In both *Lyons* and *Colin*, the driver stayed within the lane. In this case, substantial evidence supports the trial court's finding that the wheels of Carrillo's car crossed over the white broken lines into the next lane. And whether Carrillo's driving within the lane may be described as "serpentine" or not, the movement of his car within the lane—from one side to the other, with the car coming very close to the broken lines at times—further supported reasonable suspicion that he was driving under the influence. "More than one California court has found that 'weaving' within a lane provides sufficient cause to conduct an investigatory

6

stop." (*Arburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, 1485.) (See also *People v. Russell* (2000) 81 Cal.App.4th 96, 104 [stop justified where car repeatedly drifted around within its lane and sometimes out of its lane].) Furthermore, while the constitutional reasonableness of traffic stops does not depend on the actual motivations of the officers, *Whren v. United States* (1996) 517 U.S. 806, 813, we note that unlike the police in *Lyons* and *Colin*, the officers in this case made efforts to determine whether Carrillo was intoxicated soon after he stopped.

We conclude substantial evidence supports the finding of " 'specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation,' " *Hernandez*, *supra*, 45 Cal.4th at page 299, that Carrillo was driving under the influence. Accordingly, the officers' stop of his car did not violate the Fourth Amendment, and the trial court did not err in denying the motion to suppress.

### III. DISPOSITION

The judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:



_____
Danner, J.




_____
Bromberg, J.



H050893 – People v. Carrillo