Filed 2/9/22  P. v. McKinney CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHEA BOVEE MCKINNEY,<br><br>Defendant and Appellant. | C090373<br><br>(Super. Ct. No. 17CF02821)<br><br>OPINION ON TRANSFER |

Defendant Shea Bovee McKinney appeals a sentence of three years' probation entered following his guilty plea to some charges and trial by jury on another.  He argues insufficient evidence supports his conviction for resisting/deterring an executive officer from the performance of his duty (Pen. Code, § 69, subd. (a)) because the officer in question was engaged in unlawful conduct at the time of his resistance.[1]  Defendant further challenges the trial court's imposition of certain fines and fees in contravention of

---

[1]  Undesignated statutory references are to the Penal Code.

1

*People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), arguing any failure to raise the issue was ineffective assistance of counsel. Finally, defendant requests the reduction of his probation term in light of the amendments Assembly Bill No. 1950 (2019-2020 Reg. Sess.) (Assembly Bill 1950) made to section 1203.1 (Stats. 2020, ch. 328, § 2). The People concur that defendant is entitled to retroactive application of Assembly Bill 1950 but oppose his remaining claims.

On September 13, 2021, we issued an unpublished decision remanding the matter for the express purpose of allowing the trial court to modify defendant's term of probation consistent with the passage of Assembly Bill 1950 and otherwise affirming the judgment. Defendant petitioned our Supreme Court for review, and on November 23, 2021, the Supreme Court granted defendant's petition for review and transferred the matter back with directions to vacate our decision and reconsider the matter in light of Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Assembly Bill 1869).[2] As we shall explain, we now modify the judgment to strike the complained-of requirement that defendant pay a $164 monthly probation fee, which was invalidated by Assembly Bill 1869. Our previous decision otherwise remains the same.

## I. BACKGROUND

The People's first amended complaint filed July 13, 2017, charged defendant with fleeing a pursuing peace officer while driving recklessly (Veh. Code, § 2800.2—count 1); resisting/deterring an executive officer in performance of his duties (§ 69, subd. (a)— count 2); possession of a short-barreled rifle or shotgun (§ 33210—count 3); and possession of a zip gun (§ 33600—count 4). Defendant pled not guilty.

---

[2] This order was without prejudice to any relief defendant may be entitled to once the California Supreme Court decides *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844.

2

*A.     The Motions to Suppress*

Defendant moved to suppress (§ 1538.5) all tangible and intangible evidence arising from law enforcement's unlawful contact, detention, arrest, and warrantless search of defendant (including officer observations) obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The People opposed this motion, arguing in pertinent part: (1) there was reasonable suspicion for the investigative stop; (2) following that stop, law enforcement had probable cause to investigate defendant's compliance with marijuana laws given the strong smell of unburnt marijuana coming from the truck; and (3) defendant's attempt to punch the officer and flight therefrom were intervening acts.

The hearing on defendant's motion to suppress was held concurrent with the preliminary hearing. At that hearing, Butte County Sheriff Deputy Ian Dickerson testified to his contact with defendant for Vehicle Code violations, that he smelled a strong order of unburnt marijuana emanating from defendant's truck, and that defendant denied there was any marijuana in the truck. Deputy Dickerson told defendant he was going to search the truck because he believed it contained "a large amount of marijuana." The deputy wanted to confirm whether defendant was in compliance with marijuana regulations. At this point the stop devolved, the circumstances of which are not relevant to this appeal. Ultimately, defendant fled from the scene, dragging Deputy Dickerson along until Dickerson was able to let go of defendant's arm and roll away from the truck. A short pursuit of defendant's truck was called off for safety reasons. The truck was found the next day and had defendant's identification in it. No weapons or ammunition were recovered. The testimony did not mention whether any marijuana was recovered.

Deputy Bryan Parson testified to arresting defendant in the early morning hours of June 9, 2017, after Deputy Dickerson confirmed defendant's identity. Dickerson retook the stand and confirmed he identified defendant the day he was arrested. Defendant waived his right to remain silent and admitted fleeing from Dickerson, explaining he was

3

afraid because he had a self-made zip gun that fired 12-gauge shotgun shells. Defendant admitted to running a red light when he fled and leaving the zip gun at a friend's shop where he had been hiding. Dickerson recovered the gun where defendant said he had left it. The barrel was approximately 17.5 inches long.

The court denied the suppression motion, explaining the officer properly investigated the Vehicle Code violations and the smell of the unburnt marijuana, and thus, there was no unlawful detention. Defendant then fled, so there was nothing searched or seized. Further, the deputy's observations of defendant's resistance and flight were not "suppressible." Defendant was held to answer on all counts, and the court denied defendant's section 17, subdivision (b) motion to reduce any of the charges to misdemeanors.

On May 11, 2018, defendant renewed his motion to suppress (§ 1538.5, subd. (i)), arguing "the magistrate relied on assumptions not supported by the evidence." The People disagreed, arguing Deputy Dickerson's testimony established a lawful stop to investigate Vehicle Code violations, that Dickerson had reasonable suspicion to detain defendant longer to investigate the unburnt marijuana smell that "would lead a reasonable officer to believe there was an open container of marijuana or a package in the vehicle[,]" and defendant's acts of punching Dickerson and fleeing were "independent intervening acts." Defendant argued in reply that lawful possession of marijuana is not a basis for " 'detention, search, or arrest,' " citing Health and Safety Code section 11362.1. Thus, a search premised upon the smell of marijuana was unlawful, and defendant was justified in leaving the scene because the stop extended beyond that necessary for Dickerson to perform his traffic enforcement duties. Because all subsequent searches were derived from the unlawful detention and attempted search, that evidence should also be suppressed.

Defendant separately moved to set aside the information, arguing probable cause did not support the information (§ 995) and requesting a reduction in the charges (§ 17,

4

subd. (b)).  Specifically, defendant argued Deputy Dickerson was not going to write him a ticket for the Vehicle Code infractions and sought to illegally search defendant's truck. Under these circumstances, defendant was entitled to leave.  The People opposed this motion, arguing the evidence presented at the preliminary hearing supported the information.  They further requested remand to the magistrate should the court determine any evidence was lacking (§ 995a, subd. (b)(1)) and argued against a section 17, subdivision (b) reduction given the dangerous nature of defendant's conduct.

On July 19, 2018, the court heard defendant's motions together, electing to dismiss count 1 because there was no evidence in the record regarding the deputy's use of lights or siren.  The court also granted defendant's request to reduce the firearm possession counts to misdemeanors.  However, the court denied defendant's request as to count 2 (resisting an executive officer in performance of his duties).  Defendant later pled no contest to the two misdemeanor possession charges and received a jury trial on the resisting count.

## B.    *The Trial*

At trial, Deputy Dickerson testified in pertinent part to his training and experience, including the training required for his K-9 partner as part of the Narcotics and Apprehension unit, which included looking for marijuana, methamphetamine, heroin, and ecstasy.  Dickerson had received Proposition 64 training and knew that it was against the law to possess more than 28.5 grams of marijuana, as well as to have an open container of marijuana in a car (similar to the alcohol prohibition).  He understood court decisions supported that it was lawful to "search to make sure someone is within compliance of the marijuana ordinances."  When Dickerson conducted traffic stops, he was mindful of officer and public safety concerns, including driver demeanor, movements, and honesty. Honesty was "very important" because dishonesty indicated the driver could be concealing something illegal.  He had been trained on appropriate escalation of response

5

to a developing situation, which required an objectively reasonable response given all circumstances and discussed that continuum.

Specific to Deputy Dickerson's June 6, 2017 stop of defendant, Dickerson was working alone with his K-9 companion when, at approximately 8:30 p.m., he saw a group of people in the parking lot of a bargain store. The store was closed, and Dickerson wanted to investigate what they were doing there. He parked and made consensual contact with a man on a bicycle who had left the group. He noted defendant's truck was missing a front license plate and had a cracked windshield obscuring the driver's view, both Vehicle Code violations. Dickerson walked over to the truck, which was slowly making its way towards the road, and made contact with defendant through his open window. Defendant stopped and complied with a request to shut off his engine. Dickerson informed defendant about the code violations and asked for his driver's license and if he had anything illegal in the truck. He then walked to the back of the truck, where he noted a tarp partially covering the license plate (another code infraction).

Deputy Dickerson returned to defendant and told him he smelled marijuana. It was a "strong, strong odor" of unburnt marijuana, coming from "within the vehicle." He noticed this smell after reading the rear license plate to dispatch. Such a smell possibly indicated an open container of marijuana and/or a significant amount of marijuana, depending on the marijuana's concentration. Dickerson asked defendant about the smell, and defendant denied there was any marijuana in the truck. Defendant's "tone" was "nervous" and "aggravated." "He was shaking as soon as [Dickerson] began asking him about the marijuana." In response, Dickerson told defendant he "smelled a strong odor of marijuana and given the overall circumstances, [Dickerson] was going to be searching his vehicle" to confirm his compliance with marijuana regulations once another officer

6

arrived.[3] These circumstances were: "The initial Vehicle Code violations, the obstructed license plate, his nervous response, [and] the fact that he denied marijuana within the vehicle, despite the strong odor." Denial of possession of marijuana was suspicious because it suggested an attempt to conceal that defendant was violating the law. Other information brought out on Dickerson's redirect were that it was a high crime, high drug, and high drug sales area. Finally, Dickerson had stopped because he saw individuals crowded together around defendant's truck in a poorly lit area, consistent with hand-to-hand drug transactions and a desire to avoid detection.

According to the sheriff's report, defendant told Deputy Dickerson he could not detain him and that he was not under arrest. Dickerson explained that defendant could be detained pending search. Defendant was "shaking uncontrollably and stuttering," as he pleaded with the deputy to let him go so he could see his daughter. Defendant also started moving, only intermittently complying with repeated directions to stop, reaching towards his center console, causing the deputy to draw his gun and order defendant to place his hands on the door. Defendant complained he was scared, and Dickerson told him as long as he complied with his directions "that everything would be fine." After Deputy King arrived, defendant refused directions to get out of the truck. Defendant reached for the ignition, causing Dickerson to grab defendant's left arm in an effort to stop him.

Defendant started the truck anyway. He struggled to get away, striking Deputy Dickerson with his left arm. Defendant managed to put the truck in gear and began driving, dragging Dickerson who still had ahold of defendant's arm inside the truck. The deputy repositioned himself, sprayed defendant in the face with pepper spray, and then determined how to safely disengage from the truck because defendant was headed for the

---

[3] Dickerson radioed for his partner Deputy King to come after smelling the marijuana.

7

street where there was traffic.  After freeing himself, Dickerson told Deputy King to follow and attempted to follow himself, but the pursuit was canceled shortly thereafter because of safety concerns.

The jury convicted defendant of the section 69 violation.  Thereafter, on August 29, 2019, the trial court sentenced defendant for this matter, as well as two misdemeanor cases.  The court suspended sentence and placed defendant on formal probation for three years under various terms and conditions.  Following defense counsel's request not to impose certain specified fees because of an inability to pay, the court imposed five $40 court operations assessment fees (§ 1465.8); five $30 conviction assessment fees (Gov. Code, § 70373),[4] and $600 ($300, $150, and $150) in restitution fines (§ 1202.4, subd. (b)), matching, suspended $600 probation revocation restitution fines (§ 1202.44), as well as a monthly supervision fee of $164 and other fees associated with the misdemeanor matters not subject to this appeal.  The court found defendant was unable to pay the cost of the presentence investigation report and the public defender fees.  Defendant timely appealed.

---

[4] It appears the trial court stayed both the court operations assessment and conviction assessment fees associated with count 4 in this case.  The court stated, "For each count in each case, the Court is ordering the $30 conviction assessment fee pursuant to 70373 of the Government Code and the $40 court operations assessment pursuant to 1465.8 of the Penal Code.  [¶]  For Count Four in 17CF02821, the Court is imposing that, however, staying it."  However, the minute order following sentencing only reflects a stay of the court operations assessment.  The court did not articulate a basis for staying these amounts, but if it had done so because of section 654, that would be inappropriate.  (See *People v. Sencion* (2012) 211 Cal.App.4th 480, 483-484 [holding court is required to impose court facility and court security fees on all counts stayed under section 654 because those fees are not punishment].)  We will direct the court to clarify its decision and correct that action if needed.

## II.  DISCUSSION

*A.      Evidence Supporting the Lawful Duty Element*

Defendant seeks reversal of his conviction for resisting/deterring an executive officer from the performance of his duty (§ 69, subd. (a)), arguing there was insufficient evidence Deputy Dickerson was acting within his lawful duty because the deputy detained him to search his truck without probable cause.  As we shall explain, we find substantial evidence supported the lawful duty element of defendant's conviction.[5]

In assessing the validity of defendant's claim, we will first orient ourselves to the appropriate standard to be employed.  Because defendant is challenging the sufficiency of the evidence supporting his section 69 conviction, we will evaluate " ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*In re Manuel G.* (1997) 16 Cal.4th 805, 822 (*Manuel G.*); *id*. at pp. 810-811 [applying this test to the findings supporting the juvenile court's determination that the minor had violated section 69].)  In so doing, " '[w]e " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*Id.* at p. 822.)  If such evidence reasonably supports the judgment, we cannot reverse simply because the circumstances could also support a contrary finding.  (*Id*. at p. 823.)

Section 69, subdivision (a) provides:  "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h)

---

[5]  Defendant does not challenge the sufficiency of the evidence surrounding the remaining elements, and thus, we will focus on the sufficiency of the lawful duty element.

of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*Manuel G., supra*, 16 Cal.4th at p. 814.)

"The long-standing rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer ' "engaged in . . . the performance of . . . [his or her] duties" ' unless the officer was acting lawfully at the time the offense against the officer was committed. [Citations.] 'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . . [¶] . . . [T]he lawfulness of the victim's conduct forms part of the corpus delicti of the offense.' " (*Manuel G., supra*, 16 Cal.4th at p. 815, italics omitted.) As has been recognized by the high court, an officer conducting a warrantless traffic stop without reasonable suspicion would not be acting pursuant to a lawful duty, as required for a section 69 conviction. (*People v. Hernandez* (2008) 45 Cal.4th 295, 298-302 [upholding appellate court's reversal of § 69 conviction where officer pulled defendant's vehicle over without cause].) Thus, to determine whether defendant's section 69 conviction can withstand scrutiny, we must determine whether substantial evidence supports the jury's determination that Deputy Dickerson was acting lawfully at the time defendant violently resisted him. At its essence, this requires us to determine whether there was probable cause to detain defendant to search his truck.[6]

---

[6] Defendant does not challenge whether there was reasonable suspicion to stop his truck for the Vehicle Code infractions of missing a front license plate and having a cracked windshield obstructing the driver's view. Further, because we find probable cause supports Deputy Dickerson's decision to search defendant's truck, we need not address

"The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889].) 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.] Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the suspicion that a crime is being committed." (*People v. Hernandez, supra*, 45 Cal.4th at pp. 299.) A search pursuant to the automobile exception must be supported by probable cause that a search of the vehicle will yield "contraband or evidence of a crime." (*People v. Moore* (2021) 64 Cal.App.5th 291, 297.) In determining whether probable cause supported the decision to search, "we consider the totality of the circumstances." (*People v. Johnson* (2020) 50 Cal.App.5th 620, 625 (*Johnson*).)

As previously explained by this court in *Johnson*, "In 2016, Proposition 64 legalized the possession of up to 28.5 grams of marijuana by individuals 21 years or older. ([Health & Saf. Code,] § 11362.1, subd. (a)(1).) The use and possession of marijuana is not unconditional, however; there are various statutory provisions proscribing such use and possession in certain circumstances. (See, e.g., Health & Saf. Code, § 11362.3; Veh. Code, § 23222, subd. (b).) Notwithstanding any other proscription by law, [Health & Safety Code] section 11362.1, subdivision (c) provides that '[c]annabis and cannabis products involved in any way with conduct deemed lawful by this section are not contraband nor subject to seizure, and no conduct deemed lawful by this section shall constitute the basis for detention, search, or arrest.' Thus, section [Health & Safety Code] 11362.1, subdivision (c) does not apply when the totality of the

the People's argument that suggests defendant's detention for an intended, but unrealized search, only had to be supported by reasonable suspicion.

11

circumstances gives rise to a fair probability that an existing marijuana regulation was violated when the search occurred." (*Johnson, supra*, 50 Cal.App.5th at pp. 625-626, fn. omitted.)

Taking the evidence in the light most favorable to the judgment, we find the totality of the circumstances supported the legality of Deputy Dickerson's decision to search. These circumstances included that Dickerson had stopped because he observed individuals crowded together near defendant's truck in a poorly lit area, consistent with hand-to-hand drug transactions and a desire to avoid detection. These individuals were in the parking lot of a closed business at 8:30 p.m. Dickerson noted a strong smell of unburnt marijuana coming from inside defendant's truck, but defendant denied he had *any* marijuana, which Dickerson found suspicious and indicative of attempting to hide unlawful conduct. Further, defendant's tone was "nervous" and "aggravated" when he denied there was marijuana in the truck; he also started to shake when marijuana was mentioned. Finally, this stop took place in a high crime, high drug, and high drug sales area.

While any one of these factors alone may be insufficient to justify defendant's detention, taken together they constitute probable cause supporting Deputy Dickerson's decision to detain defendant for the purpose of searching his truck to determine whether he was in compliance with marijuana laws. (See *People v. Moore, supra*, 64 Cal.App.5th at pp. 300-301 [strong unexplained unburnt marijuana smell, suspected dishonesty and evasiveness in questioning, presence in a high crime area, and apparent avoidance of the officer constituted probable cause considering the totality of the circumstances]; accord, *People v. Fews* (2018) 27 Cal.App.5th 553, 561 ["evasive and uncooperative conduct, combined with the high-crime area in which the traffic stop took place, the odor and presence of marijuana, and Fews's continuous and furtive movements inside the SUV, were sufficiently unusual to raise the officers' suspicions that Mims and Fews were involved in criminal activity related to drugs and could be armed"]; see also *People v.*

12

*Lee* (2019) 40 Cal.App.5th 853, 862 [lawful amount of marijuana alone insufficient to establish probable cause, but may support probable cause where coupled with other factors contributing to an officer's reasonable belief a defendant may be violating regulations concerning marijuana possession].) Accordingly, we find sufficient evidence supported the lawful duty element.

B.      *Defendant's Dueñas Challenge*

Defendant argues that the trial court erred in imposing five $40 court operations assessment fees (§ 1465.8); five $30 conviction assessment fees (Gov. Code, § 70373), and $600 ($300, $150, and $150) in restitution fines (§ 1202.4, subd. (b)); matching, suspended $600 probation revocation restitution fines (§ 1202.44); as well as a monthly supervision fee of $164 and other fees associated with the misdemeanor matters not subject to this appeal. He complains that under *Dueñas, supra*, 30 Cal.App.5th 1157 an ability to pay hearing was required prior to imposing these amounts, pointing to what he characterizes as "probation's finding of indigence" and the court's own refusal to impose a fee for the cost of the presentence investigation report and the public defender fees. He therefore requests remand for an ability to pay hearing. We find defendant's failure to raise *Dueñas* below has forfeited this claim on appeal and that his counsel's failure to object on that basis was not ineffective assistance of counsel.

That a defendant must first object and demonstrate his inability to pay amounts imposed at sentencing is a longstanding and well-recognized rule. (See, e.g., *People v. Nelson* (2011) 51 Cal.4th 198, 227 [defendant's claim that the court erroneously failed to consider ability to pay a $10,000 restitution fine is forfeited by the failure to object]; *People v. Gamache* (2010) 48 Cal.4th 347, 409 [challenge to $10,000 restitution fine forfeited by failure to object to alleged inadequate consideration of defendant's ability to pay]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [rejecting argument that defendant was exempted from forfeiture because his restitution fine amounted to an unauthorized sentence based upon his inability to pay]; see also *People v. Lowery* (2020)

13

43 Cal.App.5th 1046, 1053-1054 [failure to exercise statutory right to object on ability to pay for fine imposed over statutory minimum forfeited that objection]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [defendant's failure to challenge restitution fine was a classic example of circumstance appropriate for forfeiture rule].)

Further, that the court imposed the minimum mandatory fines and fees does not forgive defendant's forfeiture. Defendant was sentenced on August 29, 2019, over eight months after issuance of the *Dueñas* decision. (*Dueñas, supra*, 30 Cal.App.5th 1157, decided Jan. 8, 2019.) Therefore, his failure to raise *Dueñas* at sentencing forfeits his *Dueñas* arguments by operation of normal rules of appellate review. (*People v. Scott* (1994) 9 Cal.4th 331, 351-354 [to preserve a sentencing issue for appellate review, the defendant must raise it in the trial court].)

That defendant's ability to pay claims are constitutional in character does not alter the application of the forfeiture doctrine. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859 [constitutional exception to forfeiture rule did not apply to claim concerning failure to obtain express waiver of an ability to pay hearing]; *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 [noting longstanding rule that a constitutional right may be forfeited in criminal proceedings by " ' "failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" ' "].)

Nor has defendant established that his counsel was ineffective for failing to object. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. (*Strickland, supra,* at pp. 693-694; *Ledesma, supra,* at pp. 217-218.) "A reasonable probability is a probability sufficient to undermine

14

confidence in the outcome." (*Strickland, supra,* at p. 694; accord, *Ledesma, supra,* at p. 218.)

Defendant cannot show his counsel was ineffective because we find his arguments to be without merit. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless position does not demonstrate ineffective assistance of counsel].) Defendant's appeal hinges on the analysis in *Dueñas* finding an ability to pay hearing is required before imposing fines and fees, and we are not persuaded that this analysis is correct. Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp, supra,* 38 Cal.App.5th 47, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court operations and court facility assessment fees under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra,* at pp. 95-96.)

In the meantime, we join several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

C.       *Retroactive Application of Assembly Bill 1950*

The parties agree that Assembly Bill 1950 should apply retroactively to defendant's non-final judgment. For the reasons previously explained by this court in *People v. Lord* (2021) 64 Cal.App.5th 241, 244-246, we concur that defendant is entitled to have his probation term reduced to the new maximum term of two years. (§ 1203.1,

15

subd (a).)[7]  Because the end of what will be defendant's new probation term has now passed, we will remand the matter to allow the trial court to shorten the probation term and adjust any other conditions impacted by this change.

D.      *Retroactive Application of Assembly Bill 1869*

The California Supreme Court's November 23, 2021 order directed this court to vacate the previous decision and "reconsider the cause in light of Assembly Bill No. 1869 (Stats. 2020, ch. 92, § 62)."  Assembly Bill 1869 was signed into law in September 2020 and became operative on July 1, 2021.  The bill repeals the authority to collect various fees contingent upon a criminal arrest, prosecution, or conviction for the cost of administering the criminal justice system.  (See Stats. 2020, ch. 92, §§ 11, 62.)  The bill makes the unpaid balance of these court-imposed costs, including the fees at issue in this case, unenforceable and uncollectible, and requires that any portion of a judgment imposing such costs be vacated.  (See *ibid*.; § 1465.9, subds. (a), (b) [operative July 1, 2021]; Gov. Code, § 6111, subds. (a), (b) [same].)

Specifically, as relevant to this appeal, any portions of the $164 monthly cost of probation fee imposed pursuant to section 1203.1b are now "unenforceable and uncollectable."  (§ 1465.9, subd. (a).)  Further, "any portion of a judgment imposing those costs shall be vacated."  (*Ibid*.)  Accordingly, we will modify the judgment to strike the complained-of requirement that defendant pay a $164 monthly probation fee, which was invalidated by Assembly Bill 1869.

---

[7]  We note that neither of the exceptions to the two-year limitation apply to this matter. (§ 1203.1, subd. (*l*).)

## III. DISPOSITION

The judgment is modified to strike the $164 monthly probation fee in light of the changes brought about by Assembly Bill 1869. Further, the trial court is directed to amend the probation order consistent with this opinion and provide a copy to the probation department. The court shall also clarify the decision to stay at least some of the fees associated with the sentence for count 4 in this case and shall un-stay those amounts if the court had stayed them because of an application of section 654. (See *People v. Sencion, supra*, 211 Cal.App.4th at pp. 483-484 [holding court is required to impose court facility and court security fees on all counts stayed under section 654 because those fees are not punishment].) The judgment is otherwise affirmed.

/S/

_____
RENNER, J.

I concur:

/S/

_____
HOCH, J.

I concur; as to part II.B of the Discussion, I concur in the result.

/S/

_____
MAURO, Acting P. J.

17