Filed 1/12/23  P. v. Sanchez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B317733 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA118660-03) |
| v. | |
| COLT HAWKEYE SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy

Attorney General, and Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.

_____

Colt Hawkeye Sanchez was convicted in 2013 of second degree murder with a true finding he had personally used a deadly or dangerous weapon during the commission of the crime. In January 2022, following an evidentiary hearing, the superior court denied Sanchez's petition for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95),[1] finding beyond a reasonable doubt that Sanchez was the actual killer of Jose Ramos and, therefore, guilty of murder under California law as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437).

Foregoing any argument that substantial evidence does not support the superior court's order, Sanchez contends, because the court's finding was based on a cold record—that is, without observation of live testimony[2]—we should review the ruling independently, as the Supreme Court did in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*) when considering the superior court's decision whether to vacate a conviction under section 1473.7, subdivision (a)(1).  Using that standard, Sanchez argues, in light of the unreliability of the eyewitness testimony identifying him as the individual who inflicted the fatal stab

---

[1]     Statutory references are to the Penal Code.

[2]     Judge John A. Torribio, who retired in 2021, presided at Sanchez's trial.  Judge Joseph R. Porras heard Sanchez's section 1172.6 petition.

wound, the evidence did not prove he was guilty of murder beyond a reasonable doubt.

We agree with the reasoning in *People v. Clements* (2022) 75 Cal.App.5th 276, 302, which rejected the identical argument for application of an independent standard of review on appeal from the denial of a section 1172.6 petition following an evidentiary hearing, and affirm the superior court's order denying Sanchez's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Sanchez's Murder Conviction and Appeal*

Sanchez and three codefendants were charged with the murder of Ramos, who was stabbed to death while attending a birthday party for his girlfriend at her house in Pico Rivera. The evidence at trial established that shortly after midnight the four youths, all members of the Pico Nuevo criminal street gang, along with several other individuals, attempted to force their way into the invitation-only party. Ramos approached one of the codefendants and told her she could not attend the party. A fight broke out, and Ramos was stabbed three times. The fatal wound was to his chest.[3] The fighting ended when someone among the uninvited group waved a semiautomatic firearm and fired several shots into the air. The intruders then fled in one or two vehicles, including a dark sports utility vehicle. Sanchez was later identified as the person who had stabbed Ramos. The murder weapon was never found.

---

[3] Ramos was stabbed in the shoulder, abdomen and chest. The fatal chest wound pierced his heart. Ramos had no defensive injuries to his hands or forearms.

The eyewitness testimony identifying Sanchez as the person who stabbed Ramos was inconsistent. Stephanie Chagolla, Ramos's girlfriend, testified Sanchez and one other man were involved in the fight with Ramos; Sanchez, who had a visible "PN" tattoo on his neck, was holding a knife. When first interviewed by the police following the murder, however, Chagolla, who was extremely upset, said Ramos had been shot. Later that day she said she had seen an individual with a knife, whom she described as a 20-year-old bald Hispanic male with a medium complexion who weighed approximately 220 to 240 pounds. She did not mention any tattoos. Sanchez at the time of the murder in January 2011 was 24 years old and weighed 150 pounds. Chagolla did not select Sanchez from a photographic lineup one week after the party and a few months later identified him during a live lineup only as one of two men who looked familiar.

Jesus Munoz, who was working as a DJ at the party, identified Sanchez and his three codefendants as individuals who were trying to get into the backyard party. When the fight started, Munoz saw Sanchez "just go at" Ramos's chest, but Munoz could not see if Sanchez had anything in his hand. Munoz said Sanchez made a thrusting motion toward Ramos's chest and Ramos's shirt appeared to be sticking to Sanchez's hand as the men fought. Munoz thought Sanchez was "just punching him in the chest." When first interviewed by the police, he described the man who stabbed Ramos as five feet 10 inches tall with a medium complexion wearing a multi-colored shirt with a designer logo. He did not mention tattoos. Munoz did not select Sanchez from a photographic lineup. The following month Munoz

4

identified Sanchez at a live lineup, specifically recalling the "Pico Nuevo" tattoo on the back of his head.

Christian Cedano, a guest at the party, could not identify any of the four defendants during his testimony. He previously described the stabber as five feet six inches tall, weighing about 200 pounds.

Jesus Barraza, another guest at the party, testified for the defense. Barraza told the police the stabber had a tattoo of red lips on his neck and repeated that description at trial. Raymond Sanchez, an active Pico Nuevo gang member with a tattoo of red lips on his neck, came to the party with another guest, driving a black sports utility vehicle. Raymond Sanchez was never placed in a live lineup.

These and other witnesses testified to the presence of the four defendants at the party and the extent to which they observed Sanchez and his codefendants participating in the fight.

In addition to instructions defining homicide (CALCRIM No. 500) and explaining first and second degree murder and manslaughter (CALCRIM Nos. 520, 521, 522, 570; CALJIC Nos. 8.30, 8.50, 8.70, 8.71, 8.72), the jury was instructed with CALCRIM Nos. 400 on general principles of aiding and abetting, 401 on aiding and abetting intended crimes, and 403 on the natural and probable consequences doctrine where only a nontarget offense is charged. The natural and probable consequences instruction defined the target offenses as any one of disturbing the peace, trespass, assault or battery, with murder as the nontarget offense.

The jury convicted all four defendants of second degree murder (finding them not guilty of first degree murder), found true the criminal street gang enhancement as to each of them

and found true the allegation Sanchez had personally used a deadly or dangerous weapon during the commission of the crime.

On appeal all four defendants challenged the sufficiency of the evidence to support their convictions for second degree murder: Sanchez specifically contended there was insufficient evidence to support a finding he was the direct perpetrator of the stabbing death of Ramos. The three codefendants argued the evidence was insufficient to convict them under an aiding and abetting theory of liability. We rejected those claims and affirmed the convictions.[4] (*People v. Gonzalez* (May 11, 2015, B252881) [nonpub. opn.].) After summarizing Sanchez's argument concerning inconsistencies in, and the purported unreliability of, the identifications of him as Ramos's killer, we held, "[T]he witnesses' identifications of Sanchez were neither physically impossible nor inherently improbable, and any weaknesses in those identifications went to the weight of the evidence, not the admissibility. Moreover, evidence casting doubt on the credibility of the eyewitness identification evidence was presented to the jury and argued at length by counsel. . . . The jury accordingly was able to judge the credibility of the eyewitness identification evidence, and reasonably could have concluded from such evidence that Sanchez was the direct perpetrator in the stabbing death."

---

[4] We also held the gang enhancements were supported by substantial evidence, upheld several evidentiary rulings made by the trial court and rejected appellants' arguments asserting instructional error.

2. *Sanchez's Petition for Resentencing*

Sanchez, representing himself, filed a petition for resentencing on January 29, 2021 under former section 1170.95, checking boxes on the form establishing a facially sufficient case for resentencing relief, including the boxes stating he had been charged with murder by complaint, information or indictment that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill 1437.  As Sanchez requested, the court appointed counsel to represent him during the resentencing proceedings.

The prosecutor filed a response, asserting Sanchez had been convicted as the actual killer, rendering him ineligible for resentencing relief.  In support the prosecutor argued the court could rely on the record of conviction to determine whether Sanchez was eligible for resentencing, including the appellate record and our opinion affirming the judgment.  Sanchez's appointed counsel filed a reply, contending Sanchez had shown a prima facie case for relief and the court should issue an order to show cause and conduct an evidentiary hearing at which the People have the burden of proof.

The court found Sanchez had established a prima facie case and issued an order to show cause.  The court subsequently explained, although it seemed apparent from our opinion on direct appeal that Sanchez had been found guilty as the actual perpetrator, because a natural and probable consequences instruction had been given with respect to all four defendants, it was possible, for purposes of evaluating a prima facie case,

7

Sanchez had been convicted on that now-invalid theory of liability.

At the evidentiary hearing on January 19, 2022 the court stated it had reviewed—and admitted into evidence—the complete trial transcript and the appellate opinion affirming the convictions of Sanchez and his three codefendants. Neither the People nor Sanchez called any witnesses or introduced additional evidence. After argument from counsel, the court, reviewing the evidence as an independent fact finder, denied the petition, finding beyond a reasonable doubt that Sanchez "is guilty of murder under California law as amended by the changes to section 188 or 189 made effective January 1st, 2019."

Sanchez filed a timely notice of appeal.

## DISCUSSION

1. *Section 1172.6 (Former Section 1170.95)*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) It also authorized, through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill 1437's changes to the definitions of the crime. (See *Strong*, at p. 708; *Lewis*, at p. 957; *Gentile*, at p. 843.) As amended by

8

Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1172.6, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1172.6, subd. (b)(3)), and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c); see *People v. Lewis, supra,* 11 Cal.5th at pp. 962-963.)

When, as here, a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*)

2. *Substantial Evidence Is the Proper Standard of Review*

This court held in *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985, and *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113, as has every other court of appeal that has addressed the issue, that appellate review of superior court findings following a full evidentiary hearing pursuant to section 1172.6, subdivision (d)(3), is for substantial evidence. (E.g., *People v.*

9

*Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 302; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.)  The substantial evidence standard of review, of course, is applied by appellate courts when reviewing a judgment of conviction (see, e.g., *People v. Navarro* (2021) 12 Cal.5th 285, 302), and is generally the standard by which appellate courts review a trial court's findings of fact.  (See, e.g., *People v. Hernandez* (2008) 45 Cal.4th 295, 298-299 [substantial evidence standard applies to trial court's resolution of factual inquiry on a motion to suppress evidence].)  Of particular significance here, the Supreme Court held in *People v. Perez* (2018) 4 Cal.5th 1055, 1066, in the context of a postjudgment hearing under Proposition 36, the Three Strikes Reform Act of 2012, the same deferential standard should be applied to the superior court's findings of fact even if the court relied solely on the record of conviction to determine the petitioner's eligibility for resentencing.  (Accord, *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1096 [applying substantial evidence standard of review to postjudgment orders denying resentencing under Proposition 47, the Safe Neighborhoods and Schools Act.)

Notwithstanding the unanimity of appellate decisions applying the substantial evidence standard to review the superior court's factfinding in section 1172.6 and former section 1170.95 cases, Sanchez urges us instead to independently review the evidence of his guilt.  In making this argument, Sanchez relies on *Vivar*, *supra*, 11 Cal.5th 510, in which the Supreme Court evaluated the superior court's decision whether to vacate a conviction under section 1473.7, subdivision (a)(1), which requires the petitioner to show, by a preponderance of the evidence, a prejudicial error that affected the petitioner's ability

10

to meaningfully understand the actual or potential immigration consequences of a conviction or sentence. Emphasizing the issues raised by a section 1473.7 motion, "while mixed questions, are predominantly questions of law" (*Vivar*, at p. 524), the Court held an independent standard of review was appropriate.

The *Vivar* Court explained, "[O]ur embrace of independent review in this context is a product of multiple factors with special relevance here: the history of section 1473.7, the interests at stake in a section 1473.7 motion, the type of evidence on which a section 1473.7 ruling is likely to be based, and the relative competence of trial courts and appellate courts to assess that evidence." (*Vivar*, *supra*, 11 Cal.5th at p. 527.) Further underscoring the limited nature of its departure from the traditional standard of deference to trial court findings, the Court expressly noted, "Our decision addresses only the independent standard of review under section 1473.7." (*Id.* at p. 528, fn. 7.)

As our colleagues in Division Two of the Fourth District held in *People v. Clements*, *supra*, 75 Cal.App.5th 276 when rejecting the identical argument for independent review based on *Vivar* as now made by Sanchez, unlike the issues involved in a section 1473.7 hearing, whether a petitioner for resentencing under section 1172.6 remains guilty of murder under a still-valid theory of liability (was he or she the actual killer or did he or she act with reckless indifference to human life) is predominantly a factual determination. Accordingly, the factors that supported independent review in *Vivar* "don't support applying independent review in the context of reviewing a trial judge's ruling after a full hearing under [former] section 1170.95 subdivision (d)(3)." (*Clements*, at p. 302.) *Perez*, not *Vivar*, governs. (*Clements*, at p. 302; accord, *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-

233 ["we join our colleagues in the Fourth District in recognizing that *Perez*, rather than *Vivar*, is the more persuasive authority in answering the question of what standard of review applies in this case"].)

The Legislature's recent amendment of former section 1170.95 further supports the reasoning in *Clements*. Although the courts of appeal have applied the substantial evidence standard of review from the time the Legislature first passed Senate Bill 1437 (see, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 663; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087), when amending former section 1170.95 in 2021 to clarify the evidentiary standard to be applied by the superior court following issuance of an order to show cause and to correct what it characterized as other judicial misinterpretations of Senate Bill 1437, the Legislature in Senate Bill 775 did nothing to modify or correct the prevailing appellate standard of review. In construing a statute, we presume the Legislature has knowledge of existing judicial decisions and enacts or amends a statute in light of those decisions. (See, e.g., *People v. Giordano* (2007) 42 Cal.4th 644, 659; *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 727-728.)

We agree with the analysis in *Clements* and adhere to our prior holdings that the superior court's findings following an order to show cause and evidentiary hearing pursuant to section 1172.6, subdivision (d)(3), are properly reviewed for substantial evidence.

3. *The Superior Court's Order Denying the Petition Is Supported by Substantial Evidence*

Sanchez does not contend the evidence considered by the superior court at the section 1172.6, subdivision (d)(3), hearing—

12

that is, the record from his 2013 trial—was insufficient to support the finding he was Ramos's actual killer under the deferential substantial evidence standard. Nor could he do so successfully.

As we discussed when rejecting that argument in Sanchez's direct appeal, Chagolla testified she saw Sanchez holding a knife and fighting with Ramos; and Munoz testified he saw Sanchez fighting with Ramos and saw Sanchez make a thrusting motion toward Ramos's chest. Although Chagolla's identification of the direct perpetrator of the stabbing was inconsistent over time and Munoz did not see Sanchez holding a knife during the fight (but did notice Ramos's shirt sticking to Sanchez's hand), questions about any discrepancies or weaknesses in the eyewitness identifications were for the jury or, as here, superior court acting as independent factfinder to resolve. Similarly, Sanchez's contention the identifications were inherently unreliable because the fight was described by at least one witness as a "melee" and many of the party attendees had been drinking alcohol was an issue for the jury. There was nothing inherently improbable about the identifications. (See *People v. Boyer* (2006) 38 Cal.4th 412, 480 ["[i]dentification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime"]; *People v. Hester* (2020) 58 Cal.App.5th 630, 635 ["Witness credibility is a question solely for the trier of fact. [Citations.] '[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction'"]; *People v. Watts* (1999) 76 Cal.App.4th 1250, 1259 ["'[t]o warrant the rejection by a reviewing court of statements given by a witness who has been believed by the trial court or the jury, there must exist either a

13

physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear'"]; see also *People v. Romero* (2008) 44 Cal.4th 386, 400 ["[e]ven if the evidence could be reconciled with a different finding, that does not justify a conclusion that the jury's verdict was not supported by the evidence, nor does it warrant a reversal"].)

## DISPOSITION

The postjudgment order denying Sanchez's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

14