Filed 11/15/24  In re D.S. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B332259 (Super. Ct. No. FJ58010) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.S.,<br><br>    Defendant and Appellant. | |

D.S. appeals the juvenile court's order sustaining a wardship petition alleging possession of a handgun by a minor. (Welf. & Inst. Code,[1] § 602; Pen. Code, § 29610, subd. (a).)  He

_____

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

contends the juvenile court erroneously denied his suppression motion pursuant to section 700.1.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

During the evening on November 30, 2022, Officer Farias and two others from the Los Angeles Police Department were on patrol in a gang "stronghold."  Farias had been previously involved in "multiple firearm[] arrests" in the area.  He observed a vehicle partially blocking a street, making it difficult for cars to get by.  The vehicle also lacked a front license plate, a violation of the Vehicle Code.  Farias saw "a lot of smoke coming from inside the vehicle."  There were two people inside the vehicle, a driver and a passenger.

 "Upon seeing [them]" Farias saw the passenger "kind of awkwardly tuck down, like slide down the seat."  The passenger slid down "just enough for [Farias] to barely be able to see his head."  Farias then stepped out of his patrol car because "it caught [his] attention" and he believed the passenger possibly had "contraband or something."  He believed the passenger was attempting to hide, stating, "Upon seeing the police, . . . people don't usually slide down trying to conceal themselves."   He said it was "rare" for someone to "try to actually conceal themselves from us."  At the motion to suppress hearing Farias identified the passenger as D.S.

Farias immediately smelled "freshly smoked marijuana" when he exited the patrol car.  He and another officer approached the passenger side of the vehicle, and Farias illuminated the inside of the vehicle.  Farias said D.S.'s hands "appeared to be shaking, like he was nervous."  He asked D.S. to step out of the vehicle.  As soon as D.S. stepped out Farias immediately saw a firearm on the floorboard on the passenger side where D.S.'s feet

2

had been.  Farias said he "was able to see [the firearm] clear as day."  Another officer conducted a pat down of D.S. and located what felt "like loose rounds" in his pocket.

In denying the motion to suppress, the juvenile court indicated that it had listened to Officer Farias's testimony and watched his body-worn camera video.  It stated, "I do think it was a routine stop with a basis to do so with the no license plate and the partial blocking of the road."  D.S. then admitted the charge.  The court sustained the section 602 petition, declared the offense a misdemeanor, declared D.S. a ward of the court, and placed him on home probation.

## DISCUSSION

D.S. contends he was detained before Farias ordered him to exit the vehicle and that the juvenile court erred in denying his motion to suppress because there were insufficient articulable facts to justify the detention.  As a passenger in a parked vehicle, D.S. contends there was no indication he had engaged in criminal activity.  He also argues the stop was pretextual and that his "nervousness" cannot furnish reasonable suspicion.  The Attorney General concedes D.S. was detained but contends he forfeited this argument and that reasonable suspicion justified the detention.

We conclude there was no forfeiture.  To preserve his argument that his detention was unlawful, D.S had to "point out specific inadequacies" in the warrantless search.  (*People v. Williams* (1999) 20 Cal.4th 119, 135.)  D.S. did that in the underlying proceedings.  In his written motion he contended that his detention must be supported by reasonable suspicion that a detained person is involved in criminal activity.  And in their written opposition the People countered there was reasonable

3

suspicion.  We conclude D.S. sufficiently preserved his claim that the detention was unlawful.

In reviewing the denial of D.S.'s suppression motion, we defer to the juvenile court's factual findings if supported by substantial evidence.  (*In re H.M.* (2008) 167 Cal.App.4th 136, 142.)  Substantial evidence must be " ' "reasonable, credible, and of solid value." ' "  (*People v. Ayon* (2022) 80 Cal.App.5th 926, 937.)  ' "We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' "  (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)  We also consider that "experienced police officers develop an ability to perceive the unusual and suspicious, and [courts] recognize the right and duty of officers to make reasonable investigation of such activities."  (*People v. Aldridge* (1984) 35 Cal.3d 473, 477.)

The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures by law enforcement.  (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 8-9.)  However, an officer may conduct a brief investigative stop when the officer has reasonable suspicion, supported by articulable facts, that criminal activity may be afoot.  (*Terry*, at p. 22.)  " 'The touchstone of the Fourth Amendment is reasonableness. [Citation.]' "  (*People v. Durazo* (2004) 124 Cal.App.4th 728, 735.)  "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

"[T]he lack of a front license plate has long been recognized as a legitimate basis for a traffic stop." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136; see also Veh. Code, § 5200, subd. (a).) Once a vehicle is stopped, a passenger may also be lawfully ordered to exit the vehicle. (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 109-111; *People v. Lomax* (2010) 49 Cal.4th 530, 564 (*Lomax*).)

We conclude the detention here was lawful. Officer Farias observed D.S. sitting in the passenger seat of a parked vehicle lacking a front license plate that partially blocked a street, impeding traffic. Farias saw smoke emanating from the vehicle and smelled marijuana. Although D.S. was not the driver of the vehicle, D.S. "awkwardly" slid down in his seat when Farias looked at him. Based on his training and experience, Farias believed D.S. was attempting to conceal himself. Farias had reasonable suspicion to detain D.S. based on the totality of these circumstances.[2]

D.S. maintains the lack of a front license plate was a mere "pretext" for detaining him based on a "hunch that a Latino man was involved in criminal gang activity." We are not persuaded. A vehicle stop justified by probable cause is not invalidated if the officers have a subjective motivation to investigate another crime. (*Whren v. United States* (1996) 517 U.S. 806, 810-813; *Lomax,*

---

[2] Once D.S. exited the vehicle to comply with Farias's request, Farias saw the handgun in plain view which then gave him probable cause to arrest D.S. (*Lomax, supra,* 49 Cal.4th at p. 564.) D.S. challenges the seizure of the gun only on the theory that it was the "fruit" of an illegal detention, and does not challenge his arrest.

*supra*, 49 Cal.4th at 564.) The facts articulated by Farias, including D.S.'s concealment, like "flight in response to the appearance of a uniformed officer or a marked patrol car," is "behavior that police may legitimately regard as suspicious" that can further establish reasonable suspicion for a detention. (*Souza, supra*, 9 Cal.4th at p. 227.) "Law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]' " (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.)

We are not oblivious to D.S.'s claim that nervous behavior, especially by members of minority communities who may experience police violence or racial profiling, cannot give rise to reasonable suspicion. But here D.S.'s act of sliding down in his seat to conceal his presence is not the same thing as nervous behavior. In our view, D.S.'s act of sliding down in his seat was an act of concealment and but one factor relied on by Farias. Considered collectively with the other facts articulated by Farias, we conclude there was reasonable suspicion to suspect D.S. of criminal activity. Moreover, commonplace indicators of nervous behavior, such as shaking hands, occurred after D.S. slid down in his seat. This behavior occurred after Farias had lawfully detained D.S. when he approached the passenger window and illuminated the inside of the vehicle.

Unlike the defendant's behavior in *People v. Flores* (2024) 15 Cal.5th 1032, 1045, D.S.'s conduct was not a "mere deviation from perceived social convention" automatically signaling criminal behavior. Rather, Farias testified about specific facts supported by substantial evidence. Those facts included D.S.

sitting in an illegally parked vehicle without a front license plate, smoke and the smell of marijuana emanating from the vehicle, and D.S. "awkwardly" sliding down in his seat when he saw Officer Farias. Unlike the detaining officer in *Flores*, Farias did not "fail[] to articulate 'more than an inchoate and unparticularized suspicion or hunch of criminal activity.' " (*Id.* at p. 1047.) "[C]onsidered in the totality of circumstances," the facts here furnished the " 'minimal level of objective justification' " for Farias to reasonably suspect that criminal activity was afoot and detain D.S. (*Id.* at pp. 1045, 1049.) The court did not err in denying the motion to suppress.

DISPOSITION

The judgment (orders denying motion to suppress and sustaining section 602 petition) is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

7

Sabina A. Helton and Christina L. Hill, Judges

Superior Court County of Los Angeles

_____

Alice Newman and Dee A. Hayashi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.